[Civ. No. 15056. Second Dist., Div. One. Apr. 10, 1946.]

THE PEOPLE, Respondent, v. EMBASSY REALTY ASSO-CIATES, INC. (a Corporation), Appellant.

Gibson, Dunn & Crutcher and Wm. C. Wetherbee for Appellant.

Robert W. Kenny, Attorney General, and Bayard Rhone, Deputy Attorney General, for Respondent.

YORK, P. J.—This is an appeal by defendant Embassy Realty Associates, Inc., a corporation, from a judgment enjoining the defendants from placing tenants in possession of eight bungalows of a bungalow court under 99-year leases.

The complaint charged in substance that defendants were engaged in leasing or offering to lease subdivided lands situate in the State of California without giving notice to the Real Estate Commissioner, as required by section 11010 of the Business and Professions Code. The cause was tried upon stipulated facts of which the following is a brief summary:

The premises involved herein consist of a bungalow court containing ten separate bungalows, each approximately 28 x 28 feet, and two small garage units, all located within an area 105 feet in width and 176 feet in depth, in a residential district of the city of Los Angeles.

On April 21, 1944, Embassy Realty Associates, Inc., obtained title to said premises and on November 14, 1944, sold the same and transferred title thereto to the Norcourt Corporation which had been incorporated on September 29, 1944. On December 12, 1944, the Norcourt Corporation was owned exclusively by ten stockholders. Said Norcourt Corporation was organized and is now operated under a "share ownership plan" by the terms of which "said corporation has leased in writing to each of its ten stockholders one of said bungalows for a period of ninety-nine (99) years"; the garage space being similarly leased. The State Corporation Commissioner has issued a permit for the sale of stock under said plan, a copy of which forms part of the record herein.

By November 17, 1944, two of the stockholders had obtained possession under the plan, and on January 22, 1945, the Office of Price Administration authorized said corporation to take the necessary steps under local law to obtain possession of the remaining eight bungalows for its eight stockholders. "Said authorization has not been revoked or amended and is still in effect." Notices under local law have been served upon the tenants of the eight bungalows, terminating their tenancies not later than March 5, 1945; but none of said stockholders have obtained possession of the bungalow which he leased under said plan, because of the preliminary injunction which issued herein on March 6, 1945.

"V. That said bungalows have been in existence for at least twenty (20) years. That no deeds have ever been executed for any of said individual bungalows or for said garages. That no map has ever been filed under the Subdivision Map Act of the Business and Professions Code. That said stockholders have received ninety-nine year leases to the bungalow and garage space only on said premises, and that

all the remaining area of said premises consisting of sidewalks, gardens and lawn, has been retained by the corporation free of demise or alienation.

"VI. That defendants have at no time notified the Commissioner of Real Estate in writing of said plan. That the entire correspondence relating to this matter between the defendants and the Real Estate Commissioner is attached hereto, marked Exhibits 'C-1' to 'C-6', inclusive, made a part hereof, and consists of six (6) letters.

"VII. That all stock in said Norcourt Corporation has been one hundred per cent (100%) subscribed by the aforesaid individual stockholders. That said plan is at present in full operation, subject only to the acquiring of possession of said eight (8) bungalows for the occupancy by said eight (8) stockholders as aforesaid."

It was also stipulated: "That there are innumerable bungalow courts in the State of California containing five or more bungalows, which bungalows are leased and are being constantly leased to tenants for various periods of time. That the owners of said premises have never registered under or adopted the procedure set forth under the regulations of California real estate law relating to subdivisions. That no proceedings have ever been taken against said owners under said law. That to the knowledge of the Real Estate Commissioner the plan referred to in this proceeding is the first such plan which has proceeded this far, and that other plans not dissimilar have been presented to the Real Estate Commissioner and the Commissioner has notified the promoters thereof that said plan constituted a subdivision."

The trial court found in accordance with the stipulated facts, and also that "the method of disposal of the real property mentioned herein by the defendants and the 'share ownership plan' is a subterfuge to evade the provisions of sections 11000 and 11010 of the Business and Professions Code"; and made the following conclusions of law:

"I. That the method of disposing of the real property described herein constitutes an act of subdividing said property for the purpose of lease.

"II. That sections 11000 and 11010 of the Business and Professions Code relate to improved property as well as unimproved land.

"III. That the defendants in dividing said real property into five or more parcels for the purpose of lease, and having

failed to notify the Real Estate Commissioner of the State of California in writing, pursuant to the provisions of section 11010 of the Business and Professions Code, have violated the terms thereof and the defendants and each of them should be restrained and enjoined from doing any act or acts in furtherance of the subdividing of said premises unless and until defendants comply with the provisions of Chapter 1, Part 2, Division IV of the Business and Professions Code.''

Section 11010 of the Business and Professions Code reads as follows: ''Notice of intention to sell subdivided lands. [*When and by whom notice to be given.*] Prior to the time when subdivided lands are to be offered for sale or lease, the owner, his agent or subdivider shall notify the commissioner in writing of his intention to sell such offering.

''[*Contents.*] The notice of intention shall contain the following information:

''(a) The name and address of the owner.

''(b) The name and address of the subdivider.

''(c) The legal description and area of lands.

''(d) A true statement of the condition of the title to the land, particularly including all encumbrances thereon.

''(e) A true statement of the terms and conditions on which it is intended to dispose of the land, together with copies of any contracts intended to be used.

''(f) A true statement of the provisions, if any, that have been made for public utilities in the proposed subdivision, including water, electricity, gas and telephone facilities.

''(g) Such other information as the owner, his agent, or subdivider, may desire to present.''

Section 11000 of said code reads: '' 'Subdivided lands' and 'subdivision' refer to land or lands divided or proposed to be divided for the purpose of sale or lease, whether immediate or future, into five or more lots or parcels.''

Appellant here urges that the term ''subdivision'' as so defined, does not apply to bungalow courts, and that therefore the judgment is unsupported by the findings and against law. Further, he claims that the word ''subdivision'' as used in the quoted section, has been construed in the case of *Cowell* v. *Clark*, 37 Cal.App.2d 255, 258 [99 P.2d 594], to mean ''unimproved'' property. The plaintiff in that case sought to assign a lease of land for oil purposes, by subdividing into eleven units the subject matter of the said lease. The trial court sustained defendant Real Estate Commissioner's de-

murrer to plaintiff's complaint, and on appeal from the judgment of dismissal plaintiff contended "that he has not 'subdivided', that he is not a 'subdivider', and that the tracts he is attempting to lease are not 'subdivisions' within the meaning of said statute." The court held: "These contentions are not supported by the lexicographers nor by the clear wording of the statute. . . . Here the plaintiff was about to divide the lands, described in the lease to him, into eleven parcels and assign his lease *pro tanto* to each parcel. That act would be in direct violation of said section. Webster's New International Dictionary, second edition, defines 'subdivide': 'To divide a tract of land into lots to sell before developing or improving them.' Such was the act of this plaintiff. (See, also, 60 C.J. 670; *Gill* v. *Saunders,* 182 Ark. 453 [31 S.W.2d 748, 749]; *Kansas City* v. *Neal,* 122 Mo. 232 [26 S.W. 695, 696].) As said in the case last cited: ' "Subdivision" means to divide into smaller parts the same thing or subject matter. . . .' "

According to Webster's, *supra,* a subdivision of real estate is defined as: "An unimproved tract of land surveyed and divided into lots for purposes of sale. In some localities it is distinguished from a development upon which improvements are made before sale; in other localities, the terms are synonymous." The same work defines *develop*: "To convert from a tract of raw land into an area suitable for residential or business uses." Development: "A developed tract of land."

In the case of *In re Sidebotham,* 12 Cal.2d 434, 437 [85 P.2d 453, 122 A.L.R. 496], in which the sections of the Real Estate Act, here under consideration, were held to be a valid exercise of the police power, the petitioner contended that section 20j of said act (now § 11000, Bus. & Prof. Code) "defining 'subdivision', is arbitrary and indefinite . . ." With reference thereto, the court stated: "We find no uncertainty in these terms. The legislature must necessarily choose some point at which the sale of parcels from a large tract gives rise to the possible evils which require regulation, and we cannot say that the determination of five lots is improper."

In *City of Los Angeles* v. *Hughes,* 202 Cal. 731, 735 [262 P. 737], an action in eminent domain, the court stated: "Under all of the authorities, both in this state and elsewhere, the true basis for computing the market value of land sought to be condemned, in view of the evidence of its suitability for

subdivision purposes, is its value as it stood on the date when, under the law, its value was to be determined, plus any increased value which it may have had in the market by reason of its suitability for subdivision into city lots.''

In view of the foregoing, it would appear that in referring to a subdivision, the courts of this state have had in mind the generally accepted meaning of the word, i. e., *the division of a large tract of unimproved land or acreage into smaller lots or parcels.* Subdivision (f) of section 11010, *supra,* requiring a true statement of what provision has been made for public utilities in a proposed subdivision, including water, electricity, gas and telephone facilities; and as well the definition of subdivision in section 11535, Business & Professions Code (Subdivision Map Act)—lend strength to such construction of the term by the courts. Respondent has not directed attention to any authority in which the term subdivision has been used in referring to improved city lots, such as the property here under consideration.

After appellant had obtained title to the bungalow court, and before the Norcourt Corporation had been incorporated, the appellant received the following letter from respondent Real Estate Commissioner, which contains a fair statement of the existing facts:

''In line with our recent conversation, we have discussed with other deputies in this Division the question as to whether or not your proposed plan of operation in connection with the court at 1031 to 1041½ North Normandie Avenue would constitute a subdivision. It is our understanding that you propose to organize a corporation, that you propose to sell stock in this corporation to individuals, that the stock ownership would then entitle the individual to lease one of these bungalows at a nominal rental for a long period of time. We further understand that no intention exists to actually subdivide the real estate as the title to all of the real estate will be held by the corporation.

''Based on this assumption, it is our opinion that your activities in selling stock in a corporation, as above outlined, would not constitute a subdivision under the definition of a subdivision as defined in the California Real Estate Law.''

It should not be overlooked that appellant received the sanction of the State Corporation Commissioner before proceeding with the execution of its plan heretofore outlined. In view of the conclusion reached by this court that the term

subdivision, as used in the sections of the Real Estate Act hereinbefore cited, has no reference to improved city lots, it was not necessary for appellant to procure a permit from the State Real Estate Commissioner before proceeding with its plan.

For the reasons stated, the judgment is reversed.

Doran, J., and White, J., concurred.

A petition for a rehearing was denied April 29, 1946, and respondent's petition for a hearing by the Supreme Court was denied June 3, 1946.