[No. D008300. Fourth Dist., Div. One. May 14, 1990.]

JOHN SCHWETZ et al., Plaintiffs and Appellants, v.
CLARENCE E. MINNERLY et al., Defendants and Respondents.

**COUNSEL**

Thorsness, Bartolotta, McGuire & Padilla, C. Brant Noziska and Suuzen Ty Anderson for Plaintiffs and Appellants.

Butz, Lucas, Dunn & Enright, Stephen Lucas, Bacalski, Holdway & Prindle, Elizabeth M. Leonard, A. Daniel Bacalski and Margaret M. Byrne for Defendants and Respondents.

**OPINION**

**NARES, J.**—The trial court sustained a general demurrer and granted a motion for judgment on the pleadings brought by two developers on the ground the 10-year statute of limitations commenced to run when a notice of completion had been recorded on the plaintiffs' residence. The court granted leave to amend. The plaintiffs did not amend the complaint, and the complaint was dismissed. This appeal followed.

■■■ Appellants argue Code of Civil Procedure[1] section 337.15 (a) should be interpreted by dividing this section into two groups: (1) a "developer" and (2) an "improver" section. Then appellants would place two different dates on which the 10-year statute of limitations for damages for latent defects to real property commences would run: (1) an undefined date for the substantial completion of the entire "development" by the "developer" and (2) section 337.15, subdivision (g)'s four alternative dates for the substantial completion of an "improvement" by an "improver." We conclude the trial court correctly interpreted section 337.15 because a "developer" can be an "improver" and a "development" is a "work of improvement" for purposes of this section. ■ ■ ■ ■ Accordingly, we affirm.[2]

---

[1] All statutory references are to the Code of Civil Procedure Code unless otherwise specified.

[2] We note the appellants' references in their briefs to the lack of evidence as to when the defective public improvements were substantially completed. However, the trial court granted the appellants leave to amend their complaint. Having chosen not to amend, we deem this an

## Factual and Procedural Background

The facts are taken from the complaint and are not in dispute. Plaintiffs and appellants John and Betty Schwetz (Schwetzes) own a single-family residence in a residential development known as Villa Majorca. Villa Majorca was divided into three units within which were built at least 166 single family residences. A notice of completion was recorded on the Schwetzes' home as well as eight other homes on June 13, 1977.

On July 20, 1987, the Schwetzes filed a complaint for damages against defendants and respondents Clarence E. Minnerly, individually and doing business as Cemland Development Company, King Associates and Cemco Development Company (collectively Minnerly), defendants and respondents Christiana Community Builders and the Christiana Companies, Inc. (collectively Christiana), and other defendants not parties to this appeal. In their complaint the Schwetzes alleged damages to their residence caused by soil subsidence and by defendants' failure to stabilize the soil under the public improvements, causing the City of San Diego to refuse to accept or maintain those improvements. The complaint sought recovery for damages under theories of negligence, nuisance, strict liability and breach of warranty.

Minnerly filed a motion to strike the complaint and, in the alternative, a general demurrer, on the ground the complaint for damages was barred by section 337.15 as it was filed 10 years, 1 month after the notice of completion was recorded on the Schwetzes' home. The court was requested to take judicial notice of the recorded notice of completion dated June 13, 1977.

Christiana filed a motion for judgment on the pleadings on the same ground. The Schwetzes do not argue the notice of completion was invalid.

In their opposition to the motion and demurrer, the Schwetzes contended section 337.15, subdivision (a), provides this 10-year period does not commence to run against developers until the substantial completion of the "entire development." The Schwetzes requested the court take judicial notice of notices of completion on other homes in the Villa Majorca development recorded after July 20, 1977, and as late as June 28, 1978. The Schwetzes argued these notices raised a material issue of fact as to when the development was substantially completed so that the running of the statute was not clear on the face of the complaint. Finally, the Schwetzes requested the court take judicial notice of documents filed by Christiana in a related

admission there are no more facts which could be alleged to cure the defect even as to the public improvement date. (*Logan* v. *Southern Cal. Rapid Transit Dist.* (1982) 136 Cal.App.3d 116 [185 Cal.Rptr. 878].)

action in which Christiana admitted it was the original owner and developer of the Villa Majorca development, that Christiana had sold the uncompleted development to Minnerly/Cemco on April 2, 1976, but Christiana retained the right of final approval of Minnerly's plans and specifications for all structures in the subdivision and Christiana agreed to complete all the design engineering and plans for the development's grading, streets, utilities and related public improvements.[3] Neither party presented any evidence regarding the completion of the public improvements.

The trial court took judicial notice of all requested documents and ruled the statute of limitations in section 337.15 commenced to run upon recordation of the notice of completion of the Schwetzes' residence. The court granted the Schwetzes leave to amend. The Schwetzes tell us on appeal that they could not make any factual changes to the pleading. The complaint was not amended, and the action was dismissed at an unreported hearing on April 15, 1988. The written order of dismissal and entry of judgment was entered on June 7, and the Schwetzes timely appealed.

### SCHWETZES' CONTENTIONS

The Schwetzes contend section 337.15 recognizes two groups of persons. The first includes any person who develops real property, i.e., a "developer"; the second, any person who performs or furnishes any of the enumerated construction services on an "improvement," i.e., an "improver." They further contend this section "also presents two different dates on which the statute of limitations commences to run: the substantial completion of the 'development' and the substantial completion of the 'improvement'." The Schwetzes argue the terms "develop," "development" and "improvement" as they "pertain to real property are terms of art, which have acquired a technical legal meaning." The Schwetzes then correctly cite section 16 which requires technical words and phrases to be construed according to their technical meaning.[4]

Relying on *Liptak* v. *Diane Apartments, Inc.* (1980) 109 Cal.App.3d 762, 770-771 [167 Cal.Rptr. 440], the Schwetzes define "development" as " 'a developed tract of land' " and "improvement" as " 'each of the individual changes or additions to real property . . . irrespective of whether the

---

[3] We assume this is an inadvertent misstatement because if Christiana sold the uncompleted development to Minnerly, then according to the Schwetzes' rationale, Christiana was no longer a "developer."

[4] Section 16 provides: "Words and phrases are construed according to the context and the approved usage of the language; but technical words and phrases, and such others as have acquired a peculiar and appropriate meaning in law, or are defined in the succeeding section, are to be construed according to such peculiar and appropriate meaning or definition."

change or addition is grading and filling, putting in curbs and streets, laying storm drains or of other nature.' " The Schwetzes conclude "developers" are not "improvers" for purposes of section 337.15, subdivision (a), because the *Liptak* court stated: "A developer has the overall control over the development of a 'tract of raw land' and the myriad of improvements to the land which eventually complete the development. A person contributing to 'an improvement' carries out only one of the many steps towards completion of the development. [¶] Section 337.15 provides that the starting date for the 10-year period commences upon 'substantial completion of such development or improvement.' In the context in which it is used 'such development' relates to the development undertaken by any 'person who develops' real property. In respect to a developer, it is clear that the 10-year period does not commence until substantial completion of the development." (*Id.* at p. 771.)

We agree with the Schwetzes that *Liptak* states a "developer" is one who constructs many homes on a " 'tract of raw land' " and that resulting "development" is not completed for purposes of triggering the 10-year statute of limitations until the entire "development" is substantially completed. However, the above statement in *Liptak* is clearly dicta. *Liptak*'s holding does not address the meaning of "development" or "developer" for purposes of applying section 337.15. The case at bench squarely involves this issue.

From this basic premise that "developers" are not "improvers" the Schwetzes contend section 337.15, subdivision (g), enacted one year after *Liptak,* only applies to "improvers" and "improvements" and not to "developers" and "development." Following this reasoning, the Schwetzes argue a notice of completion recorded by a "developer" does not commence the 10-year statutory period. Instead, they argue "the time to sue defendant/respondent developers Minnerly and Christiana did not commence until the substantial completion of the Villa Majorca development." It is unclear how this 10-year period is to be defined if section 337.15, subdivision (g), does not apply to "developers." In their argument here the Schwetzes state, "[O]ver half of the homes in the Villa Majorca development were not completed until after July 20, 1977" and contend this date would commence the statutory period. However, in their reply brief the Schwetzes argue, "Here the evidence suggests that the final homes in the Villa Majorca development were being completed around June of 1978." Interestingly, the record does not indicate whether Christiana or Minnerly are still improving any area in the vicinity which could be included in the Schwetzes' definition of "entire development." Instead, the Schwetzes posit two alternative dates for the commencement of the 10-year period as to both developers. Either date, of course, would make the Schwetzes' complaint timely.

## DISCUSSION

### STANDARD OF REVIEW

The sole issue before this court is the interpretation of section 337.15. ■ Statutory interpretation is a question of law, and this court is not bound by the trial court's interpretation. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].)[5]

Enacted in 1971, section 337.15, subdivision (a) states:

"No action may be brought to recover damages from any person, or the surety of a person, who develops real property or performs or furnishes the design, specification, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of the development or improvement for any of the following:

"(1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property.

"(2) Injury to property, real or personal, arising out of any such latent deficiency."[6]

■ If the statute's language is clear and unambiguous, there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature. As with any other "settled principle" there are numerous exceptions to the principle. The "plain meaning" rule "does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute . . . . [T]he words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible." (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

Thus, we commence our review with the history and background of section 337.15, subdivision (g) and the state of the law as it existed prior to 1981. We do not limit our review solely to the *Liptak* decision as urged by the Schwetzes.

---

[5] Christiana incorrectly contends we are limited to reviewing the trial court's ruling for a prejudicial abuse of discretion.

[6] This section was amended by the Legislature in response to the Supreme Court's decision in *Regents of University of California* v. *Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624 [147 Cal.Rptr. 486, 581 P.2d 197], wherein the court refused to apply the provisions of this section to a construction surety. The Legislature responded by amending this section adding "or the surety of a person."

In *Regents of University of California* v. *Hartford Acc. & Indem. Co., supra,* 21 Cal.3d 624, the Supreme Court held section 337.15 is an "ordinary, procedural statute of limitations" enacted by the Legislature to "require suit be filed within the shorter of two periods, one measured from the date of discovery and a second, longer period *measured from the event giving rise to the cause of action.* [Fn. omitted.] Section 337.15, read together with Code of Civil Procure sections 337 and 338, enacts such a two-step limitation: actions *founded upon a latent defect in the development of real property* must be filed within three or four years of discovery . . . *but in any case within ten years of the date of substantial completion of the improvement.*" (*Id.* at pp. 640-641, italics added.) In other words, the event which triggers the 10-year period is the date of substantial completion of the improvement.

In *Eden* v. *Van Tine* (1978) 83 Cal.App.3d 879 [148 Cal.Rptr. 215, 12 A.L.R.4th 856], the court addressed the phrase "substantial completion" in an action brought against both a developer and a soils engineer for subsidence damages to plaintiffs' residence. The trial court held the plaintiffs' action was barred because the residence was habitable, i.e., substantially completed when the notice of completion was recorded more than 10 years before the complaint was filed. The plaintiffs appealed arguing the Legislative intent behind the phrase "substantial completion" was meant to be the time of sale of delivery of a home to a buyer. The court disagreed, stating in relevant part, "Section 337.15 deals with real property works of improvement within the meaning of section 3082 et seq. of the Civil Code. [Fn. omitted.] Section 3086, in pertinent part, provides: ' "Completion" ' means, in the case of any work of improvement other than a public work, *actual completion* of the work of improvement." (*Id.* at p. 884, italics in original.)

Then *Liptak* v. *Diane Apartments, Inc., supra,* 109 Cal.App.3d 762, presented the issue of the application of section 337.15 to two grading subcontractors, Toups and Warren. In *Liptak,* a tract of land was developed commencing in 1966 by Puente Knolls Development Company. Toups and Warren completed their grading, filling and maintaining of the slope in this tract (27920) during 1967. However, the court noted "substantial completion of the homes and housing tract did not take place until June 1972." (*Id.* at p. 767.) The Liptaks purchased a home in tract 27874 located adjacent to and below tract 27920. Warren was also responsible for the grading and maintenance of slopes in tract 27874. In their 17th and 19th causes of action the Liptaks alleged Warren's work on tract 27874 was performed in 1968-1969. In 1978, the Liptaks' home was damaged by earth movement, and the Liptaks filed a complaint for damages against the developers of both tracts and named Warren and Toups as codefendants.

Toups and Warren demurred raising section 337.15 as a bar. The trial court agreed and sustained the demurrers without leave to amend. The Liptaks appealed contending "the 10-year period prescribed by section 337.15 *does not commence until the particular tract home involved is completed,* so that there is but one date for the commencement of the statute of limitations relating to real property purchased by the consumer." (*Liptak* v. *Diane Apartments, Inc., supra,* 109 Cal.App.3d at p. 768, italics added.) Toups and Warren contended "that the period prescribed by section 337.15 commenced as to a particular subcontractor at the time the subcontractor substantially completed the particular improvement involved." (*Ibid.*) In summarizing its holding the *Liptak* court at page 768 stated, "The 10-year period provided by section 337.15 commences to run in respect to a person contributing to an improvement on real property at the time the improvement is substantially completed." Reiterating its summary at page 770 the court held, "[T]he 10-year proscription of section 337.15 commences to run, in respect to a party making an improvement, at the time the improvement is substantially completed." (Italics omitted.)

For purposes of distinguishing subcontractors and their works of improvements from developers and development, the *Liptak* court noted the word "improvement, in respect to real property, has been described in various manners depending on the context in which it was used." (*Liptak* v. *Diane Apartments, Inc., supra,* 109 Cal.App.3d at p. 770.) For the purpose of defining "improvement" as to the issue before it, the court referred to the definition of "improvement" found in Government Code section 66419 in respect to subdivision maps, to Civil Code section 3106 defining "work of improvement" and to Webster's Dictionary. (*Id.* at pp. 770-771.) Thus the court held, "As used in section 337.15 'an improvement' is in the singular *and refers separately to each of the individual changes or additions to real property that qualifies as an 'improvement' irrespective of whether the change or addition is grading and filling, putting in curbs and streets, laying storm drains or of other nature."*

In defining "developer" and "development" for purposes of distinguishing these words from "improver" and "improvements" the court cited *People* v. *Embassy Realty Associates* (1946) 73 Cal.App.2d 901, 905 [167 P.2d 797], which used Webster's New International Dictionary, second edition. Webster's defined "develop" as: "To convert from a tract of raw land into an area suitable for residential or business uses" and "development" as: "A developed tract of land." From this distinction the *Liptak* court concluded, "A developer has the overall control over the development of a 'tract of raw land' and the myriad of improvements to the land which eventually complete the development. A person contributing to 'an improvement' carries *out only one of many steps towards completion of the*

development." (*Liptak* v. *Diane Apartments, Inc., supra,* 109 Cal.App.3d at p. 771.)

One year after the court's decision in *Liptak,* the Legislature amended section 337.15, enacting a new subsection, subdivision (g).

Section 337.15, subdivision (g) states:

"The 10-year period specified in subdivision (a) shall commence upon substantial completion *of the improvement,* but not later than the date of one of the following, whichever first occurs:

"(1) The date of final inspection by the applicable public agency.

"(2) The date of recordation of a valid notice of completion.

"(3) The date of use or occupation of the improvement.

"(4) One year after termination or cessation of work on the improvement.

"The date of substantial completion shall relate specifically to the performance or furnishing design, specifications, surveying, planning, supervision, testing, observation of construction or construction services by each profession or trade rendering services to the improvement." (Italics added.)

From this perspective of the distinction between "developers" and "improvers" set forth in *Liptak,* the Schwetzes argue subdivision (g)'s provisions exclude "developers." The Schwetzes urge an interpretation of section (g) determining "the clear legislative intent underlying subsection (g) was to preserve the holdings of *Liptak* that the time for suing an improver commences upon substantial completion of the improvement, and for suing a developer, upon the substantial completion of the development."

### LEGISLATIVE HISTORY

In 1981, Assembly Bill No. 605 (1981-1982 Reg. Sess.) was introduced with the intent of codifying the *Liptak* holding by amending section 337.15 to include subdivision (g). Absent from this amendment is any definition of "development."

The Senate Committee on Judiciary digest for Assembly Bill No. 605 contains the following statement:

"2. *Codification of case law*

"In *Liptak* v. *Diane Apartments,* Inc. (1980) 109 Cal.App.3d 762, the court of appeal held that with respect to a developer, the ten-year limitation

period does not commence until the development is substantially completed.

"With respect to a person who has contributed to an improvement on the developed property, the court held that the period commences when that particular improvement has been substantially completed, regardless of the completion time of the development itself.

"AB 605 would codify the *Liptak* holding on these issues." Likewise, the Senate Republican Caucus digest for Assembly Bill No. 605 contains the following: "In *Liptak* v. *Diane Apartments, Inc.* (1980), 109 Cal. App. 3d 762 [*sic*], the court of appeal held that with respect to a developer, the ten-year limitation period does not commence until the development is substantially completed.

"With respect to a person who has contributed to an improvement on the developed property, the court held that the period commences when that particular improvement has been substantially completed, regardless of the completion time of the development itself.

"AB 605 would codify the *Liptak* holding on these issues."

Since *Liptak* speaks of a developer as one who has "overall control over the development of a 'tract of raw land' and the myriad of improvements to the land which eventually complete the development," the above-quoted digests indicate the Legislature might have intended this result through the enactment of subdivision (g) to section 337.15.

However, the Schwetzes' argument misreads *Liptak*'s holding and ignores the legislative objective in enacting section 335.15, subdivision (g). *Liptak* did not hold a developer could not be an improver, and the court did not exclude development as an improvement. The legislative objective in enacting section 335.15, subdivision (g), was to define the event giving rise to the cause of action, i.e., the substantial completion date of the work of improvement.

## LEGISLATIVE OBJECTIVE

When the Legislature enacted section 337.15, subdivision (g), its objective was stated in the Legislative's Counsel's Digest as follows: "Under existing law, an action for damages for or arising from a latent deficiency against persons who develop real property or who perform various services relative to the construction of improvements on real property may be barred after 10 years following substantial completion of the particular development or

work of improvement. Existing law does not define the term 'substantial completion.' [¶] This bill would define the term 'substantial completion.' "

As noted, a "work of improvement" or "improvement" had been defined in both *Eden* and *Liptak.* In addressing the owners' arguments regarding what event constituted substantial completion, the courts used definitions from two sources, Civil Code section 3086 et seq. and Government Code section 66410 et seq. Both courts recognized these words were "terms of art" requiring them to be construed according to their technical definitions.

Civil Code section 3106 defines "work of improvement" as follows: " 'Work of improvement' includes but is not restricted to the construction, alteration, addition to, or repair, in whole or in part, *of any building,* wharf, bridge, ditch, flume, aqueduct, well, tunnel, fence, machinery, railroad, or road, the seeding, sodding, or planting of any lot or tract of land for landscaping purposes, the filling, leveling, or grading of any lot or tract of land, the demolition of buildings, and the removal of buildings. *Except as otherwise provided in this title, 'work of improvement' means the entire structure or scheme of improvement as a whole.*" (Italics added.) According to this definition, a constructed building or structure is indisputably a "work of improvement" and the Schwetzes concede their residence is, in fact, a work of improvement.

Next, Government Code section 66419 defines improvement: "(a) 'Improvement' refers to such street work and utilities to be installed, or agreed to be installed, by the subdivider on the land to be used for public or private streets, highways, ways, and easements, as are necessary for the general use of the lot owners in the subdivision and local neighborhood traffic and drainage needs as a condition precedent to the approval and acceptance of the final map thereof.

"(b) 'Improvement' also refers to such other specific improvement or types of improvements, the installation of which, either by the subdivider, by public agencies, by private utilities, by any other entity approved by the local agency or by a combination thereof, is necessary or convenient to insure conformity to or implementation of the general plan . . . ." Noticeably absent from either definition is the word "development." However, just as the words "work of improvement" and "improvement" are technical terms, the word "development" in the context of land use, planning and subdivision is similarly a technical term. Its definition is found in title 7, division 1, of the Government Code. Government Code section 65927 provides as follows: " 'Development' means, on land, in or under water, the placement or erection of any solid material or structure; discharge or disposal of any dredged material or of any gaseous, liquid, solid, or thermal

waste; grading, removing, dredging, mining, or extraction of any materials; change in the density of intensity of use of land, including, but not limited to, subdivision pursuant to the Subdivision Map Act . . . , and any other division of land . . . ; change in the intensity of use of water, or of access thereto; construction, reconstruction, demolition, or alteration of the size of any structure, including any facility of any private, public, or municipal utility; and the removal or harvesting of major vegetation other than for agricultural purposes, kelp harvesting, and timber operations . . . .

"As used in this section, 'structure' includes, but is not limited to, any building, road, pipe, flume, conduit, siphon, aqueduct, telephone line, and electrical power transmission and distribution line.[7]

The Schwetzes urge us to interpret the word "development" by ignoring this technical definition and necessarily adding the word "entire" before the word "development" or by redefining the statute to encompass a "development project" rather than a "development." ■ Where the words of the statute are clear, " 'the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' [Citation.]" (*California Teachers Assn.* v. *San Diego Community College Dist., supra,* 28 Cal.3d 692, 698.)

■ Turning to the plain meaning of the statute as well as the legislative intent of enactment of section 337.15, subdivision (g), it is clear the intent was to define what event triggered the 10-year period and not what label is used to define the person who performed the work of improvement. The particular development or work of improvement can be one "improvement" such as grading. It can also be a "particular development," i.e., a completed structure or dwelling. When the work of improvement meets one of the four criteria of section 337.15, subdivision (g), the "improver"—whether an architect, engineer, subcontractor, contractor, or developer—is entitled to raise the provisions of section 337.15, subdivision (g), as a bar to an action which seeks damages for latent defects after the 10-year period has passed. Further evidence the Legislature intended the words "development" or "work of improvement" be read in this context is found in the provisions of the bill itself. As initially introduced, subdivision (g) contained the word "project." The word "improvement" was substituted for the word "project."[8]

---

[7] The definitions set forth above are those which existed on the date the Legislature enacted section 337.15, subdivision (g). There have been amendments to these definitions but the substance has remained constant.

[8] Thus, if adjoining owners in a tract development buy homes completed on different dates, the owner of the later completed home may have a valid claim against the "developer" though the owner of the earlier completed home is barred by the 10-year statute of limitation. This result will follow even though the cause of damage to both homes is identical. If all

The ultimate "work of improvement" to real property is the development or construction of a dwelling for use by the public. The date of substantial completion of the work of improvement or the development which triggers the 10-year period of section 337.15 was correctly applied in this case as being the date the valid notice of completion was recorded. It is immaterial who recorded the notice so long as it was validly recorded. As the notice of completion was recorded on June 13, 1977, and the action was not filed until July 20, 1987, the action is barred.

## DISPOSITION

The judgment is affirmed. Respondents to recover costs on appeal.

Todd, Acting P. J., and Froehlich, J., concurred.

---

home buyers in a tract development are to be uniformly protected for commonly caused damages, section 337.15 must be clarified by the Legislature so that the triggering date for the beginning of the 10-year statute of limitation against developers will be the completion date for the entire tract, or the entire subdivision, or some other defined portion of any large multistructure development.