[No. A048580. First Dist., Div. Five. July 10, 1991.]

CALIFORNIA SERVICE STATION AND AUTOMOTIVE REPAIR
ASSOCIATION, Plaintiff and Respondent, v.
UNION OIL COMPANY OF CALIFORNIA, Defendant and Appellant.

COUNSEL

Brobeck, Phleger & Harrison, George A. Cumming, Jr., Malcolm T. Dungan, Thomas M. Peterson, Lawrence J. Gornick, Harold E. Zahner and W. Thomas Skok for Defendant and Appellant.

Knox, Ricksen, Snook, Anthony, Harper & Robbins and Kim H. Bollinger for Plaintiff and Respondent.

## OPINION

**HANING, J.**—Defendant/appellant Union Oil Company of California, doing business as Unocal, appeals a judgment by the trial court declaring its petroleum franchise transfer policy in violation of Business and Professions Code section 21148,[1] and enjoining its further execution.

### PROCEDURAL HISTORY AND FACTS

Unocal is a California corporation engaged in the business of refining and selling petroleum products. It markets its petroleum fuel products primarily through franchised retail outlets. Unocal offers two types of franchise agreements: (1) Persons with prior experience as Unocal franchisees receive

---

[1] Unless otherwise indicated, all further statutory references are to the Business and Professions Code.

three-year "regular franchises," which contain an automatic right of renewal and protection from arbitrary termination; and (2) persons without prior experience as Unocal franchisees are offered one-year "trial franchises," which are terminable at any time for any reason.

Respondent California Service Station and Automotive Repair Association is an incorporated trade association of persons and entities engaged in the retail petroleum industry, including service station owners and operators. Respondent complained that, as a result of Unocal's franchise policy, franchised dealers are unable to sell or assign the unexpired portions of their franchises except to persons with prior Unocal franchises. Respondent brought the instant action for injunctive and declaratory relief, alleging that Unocal's franchise policy violates section 21148. The trial court ruled that Unocal's franchise policy violates section 21148 and enjoined further implementation thereof. This appeal followed.

DISCUSSION

I

Section 21148, subdivision (a), provides:

"Notwithstanding the terms of any franchise, a franchisor may not withhold its consent to the sale, transfer, or assignment of the franchise by the franchisee to another person unless the franchisor demonstrates any of the following:

"(1) The proposed purchaser of the franchise has less business experience and training than that normally required by the franchisor of prospective franchisees.

"(2) The proposed purchaser of the franchise has less financial resources than that normally required by the franchisor of prospective franchisees.

"(3) *The proposed purchaser of the franchise does not satisfy the then-current uniformly applied requirements, if any, of the franchisor applicable to prospective franchisees.*

"(4) The proposed purchaser of the franchise operates a franchise under an agreement with a franchisor other than the franchisor to whom the sale, transfer, or assignment is proposed, if the then-current uniformly applied requirements, if any, of the franchisor precludes prospective franchisees from operating a franchise under an agreement with another franchisor.

"(5) The franchisee has not offered in writing to sell, transfer, or assign the franchise to the franchisor on terms and conditions which are the same as those of the sale, transfer, or assignment of the franchise to the proposed purchaser; and the franchisee has not allowed the franchisor at least 30 days in which to either accept or decline the franchisee's written offer, prior to the sale, transfer, or assignment of the franchise to the proposed purchaser." (Italics added.)

■ Before reviewing Unocal's contentions concerning state law, we address its claim that section 21148, and specifically subdivision (a)(3), is preempted by the Petroleum Marketing Products Act (PMPA) (15 U.S.C. § 2801 et seq.). ■ Congress enacted the PMPA in 1978 to protect franchisees from arbitrary or discriminatory termination and nonrenewal of their franchises. (*May-Som Gulf, Inc.* v. *Chevron U.S.A., Inc.* (6th Cir. 1989) 869 F.2d 917, 921; *Humboldt Oil Co., Inc.* v. *Exxon Co., U.S.A.* (9th Cir. 1987) 823 F.2d 373, 374.) Because Congress was concerned with the disparity in bargaining power between franchisors and franchisees, the PMPA was intended to provide a single, uniform set of rules governing termination and nonrenewal of petroleum franchises. (See, generally, Sen.Rep. No. 95-731, 2d Sess., p. 15 [hereinafter Sen.Rep. No. 95-731], reprinted in 1978 U.S. Code Cong. & Admin. News, at pp. 873-877.) The PMPA establishes the exclusive means by which a franchisor may terminate or renew a franchise, and imposes stringent notice requirements on a terminating or nonrenewing franchisor. (See 15 U.S.C. §§ 2802, 2804; *May-Som Gulf, Inc.* v. *Chevron U.S.A., Inc., supra,* at p. 923.)

However, the PMPA strikes a balance between the interests of franchisees in being free from arbitrary and discriminatory terminations, and the franchisors' need to terminate franchises under appropriate circumstances and respond to changing market conditions. (*May-Som Gulf, Inc.* v. *Chevron U.S.A., Inc., supra,* 869 F.2d at p. 921; *Freeman* v. *BP Oil, Inc., Gulf Products Div.* (11th Cir. 1988) 855 F.2d 801, 803.) Under the PMPA there are two types of franchises: the regular franchise described in 15 United States Code section 2801(1), and the trial franchise described in 15 United States Code section 2803(b)(1). In essence, a trial franchise is any franchise wherein the franchisee has not had a prior franchise relationship with the franchisor, and the initial term of which is for a period of not more than one year. (15 U.S.C. § 2803(b)(1)(C).) The good cause requirement for nonrenewal or termination of a regular franchise is not required for terminating a trial franchise. (15 U.S.C. §§ 2802, 2803(a)(1); *Freeman* v. *BP Oil, Inc., Gulf Products Div., supra,* at p. 802; *Esquivel* v. *Exxon Co., U.S.A.* (W.D.Tex. 1988) 700 F.Supp. 890, 891.) The only requirement for terminating a trial franchise is that

proper notice must be given at the conclusion of the initial term. (15 U.S.C. § 2803(b)(1)(D).)

The PMPA expressly states: "The term 'trial franchise' does not include any unexpired period of any term of any franchise (other than a trial franchise, . . .) which was transferred or assigned by a franchisee to the extent authorized by the provisions of the franchise or any applicable provision of State law which permits such transfer or assignment, without regard to any provision of the franchise." (15 U.S.C. § 2803(b)(2).)

■ When Congress expressly states in its enactment which areas of state authority are preempted, a state law will fall if (1) a direct conflict exists between the state and federal regulation such that it is impossible to comply with both laws (*Florida Avocado Growers* v. *Paul* (1963) 373 U.S. 132, 142 [10 L.Ed.2d 248, 256, 83 S.Ct. 1210]), or (2) the state regulation "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (*Hines* v. *Davidowitz* (1941) 312 U.S. 52, 67 [85 L.Ed. 581, 587, 61 S.Ct. 399], fn. omitted), or (3) when Congress has "taken possession of the field" in a particular area so as to displace all state regulations regardless of whether or not they are compatible. (*Campbell* v. *Hussey* (1961) 368 U.S. 297, 307-308 [7 L.Ed.2d 299, 306, 82 S.Ct. 327].)

■ The PMPA specifically states which area of state law regarding regulation of petroleum franchises is preempted: "(a) To the extent that any provision of this subchapter applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect thereto) of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

"(b) Nothing in this subchapter authorizes any transfer or assignment of any franchise or prohibits any transfer or assignment of any franchise as authorized by the provisions of such franchise or by any applicable provision of State law which permits such transfer or assignment without regard to any provision of the franchise." (15 U.S.C. § 2806.)

The preemption provision of the PMPA is limited to provisions of state law dealing with the termination or nonrenewal of franchise relationships.

Congress did not intend to authorize or prohibit franchise assignments, but, as a general rule, left the matter for state regulation. (Sen.Rep. No. 95-731, *supra*, reprinted in 1978 U.S. Code Cong. & Admin. News, at p. 901; *Humboldt Oil Co., Inc.* v. *Exxon Co., U.S.A., supra*, 823 F.2d at p. 375; *Prestin* v. *Mobil Oil Corp.* (9th Cir. 1984) 741 F.2d 268, 270.) However, the legislative history indicates there is an area where federal termination provisions may conflict with state laws regarding franchise assignments, and, in the case of such conflict, Congress recommended harmonizing the competing interests by judicial balancing of competing equities on a case-by-case basis. (Sen.Rep. No. 95-731, *supra; Humboldt Oil Co., Inc.* v. *Exxon Co., U.S.A., supra.*)

"For example, it is not intended that a franchisee may avoid the consequences of his own conduct which gave rise to a notice of termination or nonrenewal by merely assigning his franchise after having been notified by the franchisor of the franchisor's intent to terminate or fail to renew. Such a result would not be countenanced under general principles of equity. Similarly, it is not intended that a franchisee's rights to assign a franchise under State law may be frustrated by a franchisor's termination or nonrenewal of the franchise which, while nominally based upon ground[s] stated in the Federal legislation, is, in fact, initiated to frustrate the assignment of the franchise under State law. This would also be prohibited under traditional equity concepts. . . ." (Sen.Rep. No. 95-731, *supra*, reprinted in 1978 U.S. Code Cong. & Admin. News, at p. 901.) Thus, to the extent that the application of state laws vis-à-vis franchise assignments frustrate federal objectives, they are preempted. (*Humboldt Oil Co., Inc.* v. *Exxon Co., U.S.A., supra*, 823 F.2d at p. 375.)

Unocal specifically contends that section 21148, subdivision (a)(3), frustrates the congressional objective of allowing franchisors to issue trial franchises to franchisees with no prior franchise experience with the franchisor, because appellant would be prevented from exercising its right of unconditional termination or nonrenewal under the PMPA to an assignee who has no prior Unocal franchise experience.

On its face section 21148, subdivision (a)(3), concerns the permissible grounds by which a franchisor may withhold consent to a franchise. It does not concern the termination or nonrenewal of a franchise or notice with respect thereto. The PMPA explicitly states that it neither authorizes nor prohibits assignments authorized by state law. (15 U.S.C. § 2806(b).) Thus, the terms and validity of an assignment are governed by state law. (*May-Som Gulf, Inc.* v. *Chevron U.S.A., Inc., supra*, 869 F.2d at p. 923; *Barnes* v. *Gulf Oil Corp.* (4th Cir. 1986) 795 F.2d 358, 364; *Prestin* v. *Mobil Oil Corp., supra*, 741 F.2d at p. 270; *Ackley* v. *Gulf Oil Corp.* (D.Conn. 1989) 726

F.Supp. 353, 359-360.) In addition, the PMPA states that the unexpired portion of a franchise which is assigned as authorized by state law is included within the definition of "franchise" (15 U.S.C. § 2801(1)(B)(iii)), but is not considered a trial franchise. (15 U.S.C. § 2803(b)(2).)

Consequently, it is apparent that the PMPA permits franchise assignments to be regulated by state law so long as the assignment does not affect termination or nonrenewal. Once the assignment of an unexpired portion of a regular franchise is achieved, the resulting franchise is not a trial franchise under the PMPA and, therefore, the franchisor is not exempt from the PMPA's more stringent requirements regarding nonrenewal and termination applicable to regular franchises. Thus, while the PMPA permits a franchisor to require a franchisee who has not previously been a party to a franchise with the franchisor to accept a trial franchise in certain instances, it specifically excludes assignments of existing franchises from that requirement, leaving the regulation of assignments and transfers to state law.

We therefore conclude that section 21148, subdivision (a)(3), neither conflicts with nor is an obstacle to the objectives and purpose of the PMPA, and is not preempted thereby.

## II

 Unocal next contends the court incorrectly interpreted section 21148, and that its franchise policy conforms therewith. Statutory interpretation is a question of law and we are not bound by the trial court's interpretation. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]; *Schwetz* v. *Minnerly* (1990) 220 Cal.App.3d 296, 302 [269 Cal.Rptr. 417].)

Petroleum franchises are governed by the Business and Professions Code. Section 21140 defines "franchise" as a contractual or written agreement by a petroleum corporation and gasoline dealer granting the right to use a trademark or identifying symbol of the corporation, or an agreement between the corporation and distributor under which the dealer has the right to occupy premises owned, leased, or controlled by the corporation to engage in the retail sale of petroleum and other products of the corporation. Section 21140, subdivision (a)(3), includes within the definition of a franchise "[t]he unexpired portion of any franchise, . . . , which is transferred or assigned as authorized by the provisions of such franchise or by any applicable provision of state law which permits such transfer or assignment without regard to any provision of the franchise."

Unocal specifically contends that subdivision (a)(3) of section 21148 permits it to withhold its consent to the transfer or assignment of a regular franchise to a proposed purchaser who does not have a prior franchise relationship with Unocal. It argues that its requirements for regular franchises are uniformly applied to all prospective purchasers, and therefore are authorized by subdivision (a)(3).

The interpretation of section 21148, subdivision (a)(3), urged by respondent and adopted by the trial court is that prospective franchisees with no prior Unocal experience cannot be treated differently from those who have previously held Unocal franchises.

If statutory language is clear and unambiguous, there is no need for construction, and no need to resort to indicia of legislative intent. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) However, the "plain meaning" rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose. (*Ibid.*)

A review of the legislative history of section 21148 supports respondent's position. Prior to the 1980 enactment of section 21148, a petroleum franchise agreement could specify that a franchisee was prohibited from selling, transferring or assigning his or her franchise without the consent of the franchisor. (See Assem. Com. on Judiciary, Bill Digest, Assem. Bill No. 2609 (Apr. 1980); *Kreisher* v. *Mobil Oil Corp.* (1988) 198 Cal.App.3d 389, 403 [243 Cal.Rptr. 662].) In sponsoring Assembly Bill No. 2609 of the 1979-1980 Regular Session (hereinafter AB 2609), the legislation leading to the enactment of section 21148, respondent urged that the legislation was necessary for the following reasons: (1) The massive size of oil companies precluded bargaining on even terms between franchisors and franchisees; (2) franchisors' selective application of the consent to sell, transfer or assign requirement was often used to punish service station dealers; and (3) the inability of franchisees to sell their franchises to third parties denied them the opportunity to be compensated for the "goodwill" which may have been created and accrued during the years they operated the service station. (Sen. Com. on Bus. & Prof., Staff Analysis of Assem. Bill No. 2609, as amended (June 1980).)

Opponents of AB 2609, primarily the major oil companies, argued: (1) Because gasoline service stations represent a major investment by franchisors, they should be permitted to choose their franchisees according to their own rigorous standards; and (2) because "goodwill" is comprised of many components, including location, trademark and business credit cards,

which are of greater significance than the service station operator and because the elements of goodwill personal to the seller do not pass to the purchaser of a business, franchisees should have no expectation of profit from the transfer of goodwill. (Assem. Com. on Judiciary, Bill Digest, Assem. Bill No. 2609, *supra.*)

When AB 2609 was first introduced it permitted franchisors to withhold consent to assignment of franchises on two grounds: The prospective assignee's lack of business experience, or lack of adequate financial resources—both measured by the franchisor's usual requirements. (Assem. Com. on Judiciary, Bill Digest, Assem. Bill No. 2609, *supra.*) Thereafter, AB 2609 was amended in Assembly Committee to add a third ground for franchisors to withhold consent: The franchise had not first been offered for sale to the franchisor on the same terms and conditions within a specified time period. (Sen. Com. on Bus. & Prof., Staff Analysis of Assem. Bill No. 2609, as amended, *supra.*)

Just prior to AB 2609's enactment it was amended in the Senate to add two additional grounds permitting franchisors to refuse consent to an assignment: (1) If the proposed purchaser is operating a franchise with a competitor franchisor (see § 21148, subd. (a)(4)); (2) and the subdivision at issue in the instant case—subdivision (a)(3) of that section. (AB 2609, as amended (in Sen. July 2, 1990).)

In describing section 21148, subdivision (a)(3), the consultant to the Senate Committee on Business and Professions stated: "In effect this would allow a franchisor to withhold consent to sale if the purchaser failed to satisfy requirements such as 'character' or had been convicted of past criminal activity provided these standards were uniformly applied at that time." (Letter from Mike Wadle (consultant to Sen. Com. on Bus. & Prof.) to Legis. Counsel (July 1, 1980).)

The thrust of the foregoing legislative history reveals that section 21148 forges a compromise between the competing interests of petroleum franchisors and franchisees. The absolute right of franchisors under prior law to prevent assignment of franchises gave way to the public policy favoring a freer market for petroleum franchises, while protecting the franchisor's ability to ensure that the prospective assignee possesses the qualifications to operate the franchise successfully. "[Section 21148] has the practical effect of enabling gas station dealers to sell their franchise to a properly trained and

financially qualified buyer. . . ." (Sen. Com. on Bus. & Prof., Staff Analysis of Assem. Bill No. 2609, *supra*.)

From this perspective it logically follows that the franchisors may not establish "uniformly applied requirements" (§ 21148, subd. (a)(3)) for prospective franchisees which artificially or unreasonably restrict the franchisee's ability to sell or assign the franchise. For example, the franchisor may not "uniformly" apply the bald requirement that the prospective assignee be subject to the franchisor's approval. Unless that approval is regulated by the sort of criteria set forth in section 21148, subdivisions (a)(1), (a)(2) or (a)(4), the franchisor would have the same unfettered control to prevent assignments that section 21148 was enacted to correct.

At trial, James Campbell, respondent's executive director, testified that Unocal's refusal to consent to the assignment of existing three-year franchises and to insist on a one-year franchise had the effect of "almost [ending] the sale of [those] franchises," since relatively few purchasers were available. He explained that prospective purchasers were unwilling to invest the funds necessary to purchase a franchise in exchange for a trial franchise that could end 12 months later which, in some cases, would mean the prospective purchaser would be out of business. He also testified that the small business administration and commercial lending institutions will not lend on the sale of a Unocal franchise when a one-year franchise contract is demanded. Under Unocal's policy, as confirmed during oral argument, a month or even a week of marginal prior experience with Unocal qualifies a prospective purchaser for a regular Unocal franchise; 20 years of highly successful performance with another major petroleum distributor does not. Consequently, the effect of Unocal's policy was to invest it with virtually the same degree of absolute control over the assignment of franchises that it enjoyed prior to the enactment of section 21148.

We conclude the record supports the trial court's finding and its conclusion that Unocal's policy violates section 21148.

### III

Unocal contends the court erred in enjoining further execution of its franchise assignment policy because the lesser and adequate remedy of declaratory relief was available. The unfair competition statutes (§ 17200 et seq.) are intended to permit courts to enjoin ongoing wrongful business conduct in whatever context such activity might occur. (*People* v.

*McKale* (1979) 25 Cal.3d 626, 632 [159 Cal.Rptr. 811, 602 P.2d 731].) ▓ Injunctive relief rests in the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion. (*Palo Alto-Menlo Park Yellow Cab Co. v. Santa Clara County Transit Dist.* (1976) 65 Cal.App.3d 121, 132 [135 Cal.Rptr. 192].) Injunctive relief will be denied if, at the time of the order of judgment, there is no reasonable probability that the past acts complained of will recur, i.e., where the defendant voluntarily discontinues the wrongful conduct. (*Phipps v. Saddleback Valley Unified School Dist.* (1988) 204 Cal.App.3d 1110, 1118 [251 Cal.Rptr. 720]; *Mallon v. City of Long Beach* (1958) 164 Cal.App.2d 178, 190 [330 P.2d 423]; 6 Witkin, Cal. Procedure (3d ed. 1985) Provisional Remedies, § 281, p. 240.)

▓ Despite Unocal's statement at trial that it did not intend to violate section 21148 and that it will pursue a lawful policy in the future, we conclude it was within the court's discretion to issue an injunction rather than grant declaratory relief. The injunction affects only that aspect of Unocal's conduct which violates section 21148. Unocal does not suggest that the injunction in any way hampers the manner or extent of its business.

Unocal also contends that the blanket form of the injunction issued does not take into account varying franchise transfer situations, is not sufficiently clear as to what conduct is prohibited, and deprives Unocal of the right to enter into a trial franchise with any dealer who has not previously been a Unocal franchisee. Unocal's arguments are without merit.

The judgment states, in relevant part: "[Unocal's] practice of restricting assignment, transfer and sale of its petroleum franchises to only those persons who have previously been [Unocal] dealers/franchisees violates Business & Professions Code § 21148 because: (1) [S]uch a condition is not intended by the Legislature when it passed Business & Professions Code § 21148 to encourage and facilitate assignments, transfers and sales of petroleum franchises; (2) it is a condition to assignment, transfer or sale which is not uniformly applied to all prospective franchisees and is inherently discriminatory as between those prospective franchisees who have been [Unocal] franchisees in the past and those who have not, contrary to the legislative intent and public policy underlying Business & Professions Code § 21148[.] The court accordingly declares [Unocal's] practice in violation of Business & Professions Code § 21148 and pursuant to Business & Professions Code § 17204 and hereby enjoins its further execution."

The injunction is clear: Unocal cannot refuse to consent to the assignment, transfer or sale of a Unocal franchise on the ground that the prospective

franchisee has not previously been a Unocal franchisee. As previously stated, the injunction in no way interferes with the legitimate requirements that Unocal may impose in withholding consent to the proposed assignment, transfer or sale of a franchise.

## IV

Finally, Unocal contends the court erred in awarding attorney fees pursuant to section 21140.4. That section states, in pertinent part: "Any person who is injured in his business or property by reason of a violation of this chapter [ch. 7.8, §§ 21140-21149] may sue therefor . . . and shall be awarded attorneys' fees together with the costs of the suit. . . ."

As a general rule, in the absence of an express agreement or statute, each party to a lawsuit is responsible for its own attorney fees. (Code Civ. Proc., § 1021; *Davis* v. *Air Technical Industries, Inc.* (1978) 22 Cal.3d 1, 5 [148 Cal.Rptr. 419, 582 P.2d 1010].) Respondent brought the instant action for injunctive and declaratory relief under the unfair competition statutes (§ 17200 et seq.), which do not authorize attorney fees. (See *Pachmayr Gun Wks., Inc.* v. *Olin Mathieson Chem. Corp., etc.* (9th Cir. 1974) 502 F.2d 802, 809-812.) In determining whether respondent is entitled to attorney fees under section 21140.4, we resort to traditional rules of statutory interpretation.

" '[C]ourts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them.' [Citations.]" (*California Teachers Assn.* v. *San Diego Community College Dist., supra,* 28 Cal.3d at p. 698.) As we previously stated, if the words of a statute are clear, there is no need for statutory construction. (*Lungren* v. *Deukmejian, supra,* 45 Cal.3d at p. 735.)

Section 21140.4 permits a person who has sustained injury to his or her business or property due to a violation of chapter 7.8, the chapter in which it is included, to bring an action for damages and to recover treble damages and attorney fees and costs. Thus, by its plain meaning, section 21140.4 permits attorney fees only to a person who has suffered damages to business or property. As an incorporated trade association, respondent is a "person" for purposes of section 21140.4. (See Corp. Code, § 207; 9 Witkin, Summary of Cal. Law (9th ed. 1989) Corporations, § 1, pp. 511-512.) However, because the record does not establish that damage to respondent was alleged or proven, it is not entitled to attorney fees under section 21140.4.

That portion of the judgment awarding attorney fees to respondent is reversed. The judgment is otherwise affirmed.

Low, P. J., and King, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 26, 1991.