[No. B214828. Second Dist., Div. One. July 14, 2010.]

THE PEOPLE ex rel. CITY OF SANTA MONICA, Plaintiff and Respondent, v.
ISAAC GABRIEL, Defendant and Appellant.

884

COUNSEL

Lund Law Group and Patrick L. Lund for Defendant and Appellant.

Marsha Jones Moutrie, City Attorney, and Adam Radinsky, Deputy City Attorney, for Plaintiff and Respondent.

OPINION

CHANEY, J.—The City of Santa Monica, on behalf of the People of the State of California, filed this civil action against defendant Isaac Gabriel, a landlord, under Business and Professions Code section 17200 et seq. It alleged Gabriel sexually harassed a tenant, entered tenants' units without permission, and rented uninhabitable space as living quarters. After a trial to the court, Gabriel was enjoined from having direct contact with tenants for five years, assessed a civil penalty, and ordered to pay plaintiff's attorney fees. On appeal, Gabriel contends sexual harassment is not a business practice, the trial court erred in admitting evidence of past bad acts, and no authority supports the award of attorney fees.

We reverse the attorney fees award but otherwise affirm.

## BACKGROUND

Gabriel bought two multiunit residential properties in Santa Monica in 1995. In 1998 he was convicted for unlawfully taking a tenant's personal

property and changing the locks. He was ordered to perform 100 hours of community service. In 2004, a civil judgment in the amount of $81,690 plus attorney fees was obtained by tenants against him for illegal rent collection. In 2006, the City of Santa Monica, on behalf of the People, obtained a civil judgment for unfair practices committed from 2002 to 2004. Gabriel was assessed $40,000 in civil penalties and $43,000 in attorney fees.

In the current action, the People asserted one cause of action under the unfair competition laws. (UCL; Bus. & Prof. Code, § 17200 et seq.) They alleged that on numerous occasions in 2005 and 2006, Gabriel sexually harassed a tenant, a violation of Santa Monica Municipal Code (SMMC) section 4.56.020(j), Penal Code section 243.4, subdivision (e)(1), and Civil Code section 51.9. The People further alleged Gabriel made unlawful entries into tenants' units, in violation of SMMC section 4.56.020(d) and (*l*), and received payments for renting a utility closet as living quarters, a violation of SMMC section 8.96.050(a)(3). The People sought an injunction; appointment of a receiver to manage Gabriel's multiunit residential properties; civil penalties; costs of suit; and attorney fees pursuant to SMMC section 4.56.040(d). At trial, the court heard testimony from a tenant that Gabriel gave her unwanted hugs and kisses on several occasions while accepting her tenancy application and collecting the rent. She testified he was "always with a hug, and always some sort of a mouth near my mouth, whether that was with the hands positioning my head or my body. There was always a physical way of touching me." "[H]e would push himself into my immediate area and attempt to try to kiss me on the lips sometimes using [his] hands to position me . . . ."

The trial court heard testimony from three other tenants about additional, uncharged acts that occurred in 1995, 1997 and 1998. Melina Boudov testified Gabriel took a piece of wood tabletop from her without permission, assaulted her when she tried to retrieve it, and was nearby when there was a suspicious oil leak under her car. Mitchel Resnick testified that in 1995 Gabriel changed the lock on his garage in an attempt to force him to move and in 1998 smirked at him when he noticed someone had scratched the paint of his car with a key. He further testified that during the 1998 criminal trial someone slashed Gabriel's victim's tires in the courthouse parking lot. The implication was that Gabriel keyed the car and slashed the tires. Faith Foss testified that in 1997 Gabriel gave her an unwanted hug, grabbed or touched her breast, tried to kiss her, asked if she was a virgin, entered her apartment

five to 10 times without permission, and without permission removed an end table to have it appraised.

Gabriel repeatedly objected to these latter lines of testimony, arguing they were irrelevant and unduly prejudicial. The People argued Gabriel's remote acts were probative of the need for injunctive relief. The trial court overruled Gabriel's objections.

The trial court took judicial notice that on August 8, 2008, Gabriel was found guilty in an unrelated criminal matter of four misdemeanors, including obstructing an officer and resisting arrest in connection with a traffic stop.

The court found Gabriel rented uninhabitable space as living quarters, entered tenants' units unlawfully, and sexually harassed a tenant. It imposed a $7,500 civil penalty ($2,500 for each unfair practice) and enjoined Gabriel from interacting with tenants, setting forth its reasoning in a statement of decision filed on January 15, 2009: "Considering the nature and seriousness of the above described conduct, the persistence of the conduct, the defendant's past history of both civil and criminal violations and his complete lack of understanding of the nature and consequences of his conduct, the court enjoins the defendant from having any management role at any of his rental properties for a period of five years. The defendant is required to retain a management company approved by the City of Santa Monica, and the court, to perform all management duties ordinarily associated with rental property. The defendant is to have no contact with any past, present or future tenants. He is not to initiate or pursue any litigation, as a plaintiff, against any past, present or future tenant without the express authorization and supervision of a legal representative of the management company. He is not to enter any rental unit, either occupied or vacant, unless accompanied by a member of the management company and with good cause. Such good cause is within the sole discretion of the management representative. [¶] . . . [¶] The court is cognizant of the draconian nature of this injunction. However, the defendant has evidenced a long history of willful disobedience to previous warnings and orders. He does not appreciate the offensive and criminal nature of his conduct toward his tenants and others."

## DISCUSSION

### A. *Admission of Evidence of Prior Acts*

Gabriel argues admission of evidence regarding acts committed in 1995, 1997 and 1998 was improper under Evidence Code section 352, violated the four-year limitations period set forth in Business and Professions Code section

17208, was barred by the doctrine of res judicata, and violated his constitutional right to due process. (Bus. & Prof. Code, § 17208 and the doctrine of res judicata are inapposite, as neither bars admission of evidence of remote acts.)

A judgment may be set aside on the ground of improper admission of evidence only if the error complained of was prejudicial. (See Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574 [34 Cal.Rptr.2d 607, 882 P.2d 298].) "Prejudice is not presumed, and the burden is on the appealing party to demonstrate that a miscarriage of justice has occurred." (*Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833 [16 Cal.Rptr.2d 38].) To establish prejudice, an appellant must show a reasonable probability exists that, in the absence of the error, he or she would have obtained a more favorable result. (See *Soule v. General Motors Corp., supra*, at pp. 570, 574.)

Here, except for occasionally asserting in conclusory fashion that he was prejudiced, Gabriel ignores the prejudice issue. The court found that in 2005 and 2006 he sexually harassed a tenant, made unlawful entries into tenants' units, and rented an uninhabitable space as living quarters. He does not challenge these findings. The court assessed a civil penalty of $7,500 and enjoined him from dealing with tenants for five years. Though he calls the remedies "draconian," he does not argue they are improper. Nor does he explain how he would have obtained a more favorable result had testimony regarding remote acts not been admitted. Absent a more thorough explanation of this issue and its purported effect, we deem the argument waived. (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 865 [64 Cal.Rptr.2d 324] [an appellant must "present argument and authorities on each point to which error is asserted, or else the issue is waived"]; see *Schoendorf v. U.D. Registry, Inc.* (2002) 97 Cal.App.4th 227, 237 [118 Cal.Rptr.2d 313]; *Belli v. Curtis Pub. Co.* (1972) 25 Cal.App.3d 384, 394, fn. 5 [102 Cal.Rptr. 122] ["There is no duty on this court to search the record for evidence which will serve to overturn the judgment."].)

B. *Sexual Harassment Can Be a Business Practice*

Gabriel contends his sexual harassment of a tenant was not a business practice subject to suit under the UCL; it was, at most, personal misconduct geared toward personal gratification, with only an incidental connection to commercial activity. We disagree.

■ "By its terms the UCL prohibits as unfair competition 'any unlawful, unfair or fraudulent business act or practice.' (Bus. & Prof. Code, § 17200.) The statute has been found to prohibit 'wrongful business conduct in whatever context such activity might occur.' [Citation.]" (*Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1288 [119 Cal.Rptr.2d 190].) Whether a particular act is business related "is a question of fact dependent on the circumstances of each case." (*People v. E.W.A.P., Inc.* (1980) 106 Cal.App.3d 315, 320–321 [165 Cal.Rptr. 73].) The renting of residential housing is a business. (E.g., *Daro v. Superior Court* (2007) 151 Cal.App.4th 1079, 1101, fn. 11 [61 Cal.Rptr.3d 716].)

Gabriel sexually harassed a tenant when she applied for tenancy and several times while collecting the rent. No evidence adduced by him—he adduces none at all—indicates the harassment occurred in anything other than a landlord-tenant context. There was no evidence, for example, that he and the tenant shared an outside personal relationship or that the harassment occurred during encounters unconnected with the performance of his duties as landlord.

■ Because generally a tenant cannot easily dissolve the landlord-tenant relationship or avoid her landlord, few oppressive encounters between her and the landlord can be characterized as having only an incidental connection to commercial activity. As one commenter has noted, "When sexual harassment occurs at work, at that moment or at the end of the workday, the woman may remove herself from the offensive environment. She will choose whether to resign from her position based on economic and personal considerations. In contrast, when the harassment occurs in a woman's home, it is a complete invasion in her life. Ideally, home is the haven from the troubles of the day. When home is not a safe place, a woman may feel distressed and, often, immobile." (Comment, *Home Is No Haven: An Analysis of Sexual Harassment in Housing* (1987) 1987 Wis. L.Rev. 1061, 1073.) "Moreover, the victim's feeling of powerlessness is exacerbated by the fact that in small apartments, duplexes, or rented rooms, there is usually only one owner, the harasser. . . . [T]he power to evict as well as the power to withhold repairs and services are in the hands of the harasser." (*Id.* at p. 1074.)

That Gabriel's misconduct was geared toward personal gratification means nothing. His harassment of his tenant was made possible by the parties' commercial relationship and occurred only during business-related encounters. It had an integral connection with commercial activity and constituted business conduct.

## C. *The Award of Attorney Fees Was Improper*

Gabriel contends the court erred in awarding attorney fees to the People because the UCL does not authorize such fees. We agree.

■ In the absence of an express agreement or statute, each party to a lawsuit is responsible for its own attorney fees. (Code Civ. Proc., § 1021.) The People brought this action under the UCL. ■ Attorney fees are not recoverable under the UCL. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1148 [131 Cal.Rptr.2d 29, 63 P.3d 937] ["attorney fees . . . are not available under the UCL . . . ."]; *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 179 [83 Cal.Rptr.2d 548, 973 P.2d 527] ["Prevailing plaintiffs are generally limited to injunctive relief and restitution. [Citations.] Plaintiffs may not receive . . . attorney fees."]; *Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1179 [121 Cal.Rptr.2d 79] ["The unfair competition law does not provide for attorney fees . . . ."]; *California Service Station etc. Assn. v. Union Oil Co.* (1991) 232 Cal.App.3d 44, 58 [283 Cal.Rptr. 279] (*California Service Station*) ["the unfair competition statutes . . . do not authorize attorney fees."]; see *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 317 [133 Cal.Rptr.2d 58, 66 P.3d 1157] [prevailing plaintiffs are limited to injunctive relief and restitution].)

Quoting a treatise published by the Rutter Group, the People argue, "[a]ttorney fees are recoverable where a borrowed statute, upon which a UCL claim is based, permits such recovery." This action was predicated in part on Gabriel's violation of the SMMC. Section 4.56.040(d) of the SMMC provides in pertinent part that "[a]ny person who violates . . . the provisions of this Chapter . . . shall be liable for such attorney's fees and costs . . . ." Therefore, the People argue, the fee award was proper. We disagree.

■ The UCL " 'borrows' violations from other laws by making them independently actionable as unfair competitive practices." (*Korea Supply Co. v. Lockheed Martin Corp., supra*, 29 Cal.4th 1134, 1143.) But it does not borrow remedies from those laws. "In enacting the UCL, 'the overarching legislative concern [was] to provide a *streamlined* procedure for the prevention of ongoing or threatened acts of unfair competition.' [Citation.] Consistent with this objective, the UCL provides only for equitable remedies. 'Prevailing plaintiffs are generally limited to injunctive relief and restitution.' [Citations.] Damages are not available. [Citations.]" (*Hodge v. Superior Court* (2006) 145 Cal.App.4th 278, 284 [51 Cal.Rptr.3d 519].)

The Rutter treatise relies on two cases to support its "practice pointer" that attorney fees are recoverable in a UCL action predicated upon a statute that would permit them, *California Service Station* and *Californians for Population Stabilization v. Hewlett-Packard Co.* (1997) 58 Cal.App.4th 273 [67 Cal.Rptr.2d 621] (*Hewlett-Packard*), disapproved on other grounds in *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 171–172, 177–178 [96 Cal.Rptr.2d 518, 999 P.2d 706].

In *California Service Station*, an incorporated trade association of franchisees brought an action under the UCL, alleging Unocal's policy of restricting transfer of franchises violated Business and Professions Code section 21148. After the association prevailed, it sought and obtained an award of attorney fees pursuant to Business and Professions Code section 21140.4. That section stated, in pertinent part, that " 'Any person who is injured in his business or property by reason of a violation of this chapter [ch. 7.8, §§ 21140–21149] may sue therefor . . . and shall be awarded attorneys' fees together with the costs of the suit. . . .' " (*California Service Station, supra,* 232 Cal.App.3d at p. 58.) The Court of Appeal reversed the award of attorney fees because the association itself had neither alleged nor proved that it (as opposed to its members) sustained injury under section 21148, and thus it had no standing under section 21140.4. (*California Service Station, supra,* 232 Cal.App.3d at pp. 58–59.)

The appellate court in *Hewlett-Packard* briefly discussed the *California Service Station* decision and stated without explanation that the court "impliedly held" an award of attorney fees is proper under the UCL if the party seeking them has standing under a predicate statute that authorizes them. (*Hewlett-Packard, supra,* 58 Cal.App.4th at pp. 295–296.) This statement forms the basis of the Rutter Group's practice pointer.

We see no such implication. *California Service Station* held only that in a UCL action predicated on violation of a statute, a party lacking standing under the statute cannot obtain attorney fees authorized by it. (*California Service Station, supra,* 232 Cal.App.3d at p. 58.) Though the court could have relied on the well-established rule that attorney fees are not authorized under the UCL in the first place, its choosing to deny fees on another ground—lack of standing—does not imply the authorization exists.

■ Even if such an implication existed, appellate courts do not establish precedent by implication. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 620 [71 Cal.Rptr.2d 830, 951 P.2d 399] [decisions are authority " 'for the points actually involved and actually decided' "]; *Alameida v. State*

*Personnel Bd.* (2004) 120 Cal.App.4th 46, 58 [15 Cal.Rptr.3d 383] [appellate decisions are not authority for propositions not expressly considered].) This is especially so when the implied rule would contravene well-established authority and effect a significant change in the law.

In *Hewlett-Packard* itself, the issue was whether attorney fees may be awarded for the successful defense of a UCL claim predicated on Labor Code section 218.5, which provides for attorney fees to the prevailing party in "any action brought for the nonpayment of wages." A public interest organization had brought a UCL claim against several defendants, seeking injunctive relief based in part on alleged violations of minimum wage laws, failure to compensate for all hours worked, and unlawful deductions from wages. (*Hewlett-Packard, supra,* 58 Cal.App.4th at pp. 279, 290–292.) A successful defendant sought attorney fees pursuant to Labor Code section 218.5, but the trial court denied the motion. (58 Cal.App.4th at p. 294.) The Court of Appeal affirmed, concluding fees were unavailable under section 218.5 because the UCL action was not brought for the nonpayment of wages, but for unfair competition. (58 Cal.App.4th at p. 295.) As in *California Service Station,* the *Hewlett-Packard* court could have grounded its conclusion on the lack of authority for attorney fees under the UCL. That it chose another ground does not imply such authority exists.

The People rely on *People v. Bhakta* (2006) 135 Cal.App.4th 631 [37 Cal.Rptr.3d 652]. There, the Los Angeles City Attorney's Office brought a successful action against landlords on behalf of the People of the State of California under UCL *and* the "Red Light Abatement Law," Penal Code section 11225 et seq. The trial court awarded attorney fees pursuant to Civil Code section 3496, subdivision (b), which permits fees to be awarded to the prevailing party in "any case in which a governmental agency seeks to enjoin the use of a building or place for the purpose of illegal gambling, lewdness, assignation, or prostitution."

*Bhakta* offers no assistance, as there the prevailing plaintiff sued not only under the UCL but also pursuant to the Penal Code. "[I]f a plaintiff does not bring suit solely under the unfair competition law, the trial court has discretion to apportion fees to claims not brought pursuant to that law—as long as those claims authorize attorney fees awards." (*Walker v. Countrywide Home Loans, Inc., supra,* 98 Cal.App.4th at p. 1180.)

Here, plaintiff sued only under the UCL. The UCL does not authorize an award of attorney fees. No exception exists for UCL actions predicated on a statute that authorizes such an award.

## DISPOSITION

The award of attorney fees is reversed. In all other respects, the judgment is affirmed. Each party is to bear its own costs on appeal.

Mallano, P. J., and Rothschild, J., concurred.