Filed 8/12/15  Pulido v. Cemak Trucking CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BRIDGET PULIDO, | D065789 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CIVVS-1203259) |
| CEMAK TRUCKING, INC., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Pamela Preston King, Judge.  Affirmed.

Cholakian & Associates, Kevin K. Cholakian and David L. Barch for Defendant and Appellant.

Perona, Langer, Beck, Serbin, Mendoza & Harrison, Ellen R. Serbin; Law Office of Scott E. Spell, Scott E. Spell; Sekin, Begakis & Bish and Mindy S. Bish for Plaintiff and Respondent.

Cemak Trucking, Inc. (Cemak) appeals from a judgment of $1,978,794.69 against it following a jury's finding that Cemak's negligence caused Bridget Pulido to be hit and injured by a truck driven by a Cemak employee.

Cemak contends that (1) the trial court prejudicially erred in striking Cemak's supplemental expert designation; (2) the trial court should not have admitted the testimony of Pulido's expert witness regarding certain items of future economic damages; (3) the trial court should have granted Cemak's motion for a new trial based on insufficient evidence to support the verdict and based on excessive damages; and (4) counsel for Pulido improperly made inflammatory statements during closing argument. As we will explain, we conclude that Cemak's appeal lacks merit, and we accordingly affirm the judgment.

We also consider and deny Pulido's motion for sanctions and motion to strike portions of Cemak's appellate brief.

I

FACTUAL AND PROCEDURAL BACKGROUND

At approximately 2:00 a.m. on July 27, 2010, Pulido was walking southbound on the shoulder of National Trails Highway toward Victorville, facing oncoming traffic. Her friend, Michael Contreras, was walking southbound on the other side of the highway. Responding to a report of a pedestrian in the roadway, California Highway Patrol officers Fernando Contreras and Jerry Dean Martin stopped their patrol car on the shoulder behind Michael Contreras and activated their spotlight on him. Pulido stopped walking on the other side of the highway shoulder and turned to watch the officers. Officer

2

Martin illuminated Pulido with his flashlight and saw that she was standing where the asphalt shoulder met the dirt at the side of the highway.

Four or five seconds later, a truck driven by a Cemak employee, Darryl Black, drove past Pulido going northbound. As the truck passed Pulido, both Officer Martin and Officer Contreras saw Pulido being thrown into the air and hitting the ground. Pulido had been hit by Black's truck, with the most immediately obvious injury to her arm, on which the skin and muscle were peeled back. During later medical treatment it was determined that Pulido had suffered a broken collarbone, a broken scapula, multiple rib fractures, two fractures to her arm bones, skin and nerve damage to her arm, a collapsed lung, a torn liver, and facial bruising.

Black did not stop his truck after hitting Pulido, but Officer Contreras pursued Black and brought him back to the scene of the accident. A subsequent examination of Black's truck revealed that it was 62-feet-long, composed of a tractor and two trailers, and Pulido's body tissue was on the inside of the rear fender tire on the second trailer. Black claimed that he did not see Pulido on the side of the road and did not know that he hit her. According to Black, he was blinded from the glare of the patrol car's spotlight and maneuvered his truck in response as he passed the patrol car.

Pulido filed this lawsuit against Black and Cemak, and it proceeded to trial. Pulido's accident reconstruction expert testified that Black's truck struck Pulido while she was standing on the shoulder due to a phenomenon known as rearward amplification or "crack the whip," in which a back and forth steering maneuver that has a small effect at the front of the truck will have an amplified effect at the rear of the truck, causing the rear

3

trailer to swing out beyond the roadway. Further, a trucking safety expert called by Pulido testified that Cemak did not have an established safety program that might have educated its employees to avoid maneuvers leading to rearward amplification, and opined that Black violated the standard of care in several ways when passing Pulido, including going too fast and being distracted by the patrol car on the other side of the road. An orthopedic surgeon, Dr. Stuart Miles Gold, and a plastic surgeon, Dr. Robert Applebaum, testified about Pulido's injuries and her future surgical needs. A registered nurse, Jan Roughan, with a specialty in long-term treatment planning (also referred to as "life care" planning), testified to the costs associated with Pulido's future medical needs based on her consultation with Pulido's doctors. An economist, Tamorah Hunt, testified to the present value of those future medical costs. Cemak did not present the testimony of any expert witness, in part because the trial court struck Cemak's supplemental expert designation prior to trial.

The jury returned a special verdict finding that Cemak was negligent and that Cemak's negligence was a substantial factor in causing Pulido's injuries.[1] The jury found that Pulido's total damages were $1,978,794.69, composed of: $162,229.69 in past economic damages; $666,565 in future economic damages; $350,000 in past noneconomic damages; and $800,000 in future noneconomic damages. The trial court entered judgment against Cemak in the amount of $1,978,794.69.

---

[1] Although both Black and Cemak were defendants at trial, after the verdict, the trial court ordered the case dismissed as to Black, and it entered judgment only against Cemak.

4

Cemak filed a motion for new trial, arguing that the amount of the award for future economic damages should be reduced because it was not supported by competent evidence, and that counsel for Pulido made improper remarks during closing argument, which inflamed the jury and caused an inflated damages award. The trial court denied the motion for new trial. Cemak appeals from the judgment and also contends that the trial court erred in denying the motion for new trial.

II

DISCUSSION

A. *The Trial Court Did Not Prejudicially Err in Striking Cemak's Supplemental Expert Designation*

Cemak's first contention is that the trial court prejudicially erred in striking Cemak's supplemental expert designation.

As an initial matter, we review the applicable statutory requirements. The Code of Civil Procedure provides that upon demand, the parties shall "simultaneously exchange information concerning each other's expert trial witnesses," including the name and address of the expert and an expert witness declaration setting forth the general substance of the expert's expected testimony. (Code Civ. Proc., § 2034.210; *id.*, 2034.260.) A party may submit a supplemental expert witness list within 20 days of the initial exchange containing information about "any experts who will express an opinion on a subject to be covered by an expert designated by an adverse party to the exchange, if the party supplementing an expert witness list has not yet previously retained an expert to testify on that subject." (*Id.*, § 2034.280, subd. (a).) If a party has "unreasonably failed"

5

to list a witness as an expert in an initial exchange, "the trial court shall exclude from evidence the expert opinion" upon the motion of an opposing party who has completely and timely complied with its own expert exchange requirements. (*Id.*, § 2034.300.)

Here, Cemak and Pulido both served initial expert designations on October 21, 2013. Pulido identified seven retained experts and 12 nonretained experts. The retained experts included Joseph G. Yates, an expert on accident reconstruction, and V. Paul Herbert, an expert on trucking issues. Cemak did not identify any retained experts in its designation, and identified only a single surgeon as a nonretained expert.

On November 8, 2013, Cemak served a supplemental expert designation. Cemak's supplemental designation identified two experts. The first expert, Michael S. Varat, was described as an expert on accident reconstruction. Cemak stated that Varat was "expected to . . . rebut[] the claims of Plaintiff's accident reconstruction expert, Mr. Yates, and will also offer his own opinions on the mechanics of how the accident between Ms. Pulido and Mr. Black occurred." The second expert, Lawrence Grant, was a general manager at Cemak. According to Cemak, Grant was "expected to . . . rebut[] the claims of Plaintiff's truck safety expert, Paul Herbert, regarding the requirements for the safe operation of a tractor and two trailers."

Pulido filed an ex parte application in which it sought an order striking Cemak's supplemental expert designation, arguing that Cemak should have identified Varat and Grant in its initial expert designation. To emphasize that Cemak should have been aware of the need to designate its own experts on trucking safety and accident reconstruction in its initial designation, counsel for Pulido explained in a declaration that "long before the

6

expert designation date, [Pulido] demanded an inspection of the actual truck at [Cemak's] yard and specifically was advised that [Pulido] had retained trucking and collision reconstruction experts who would conduct the inspection." Further the declaration stated that counsel had discussed "on multiple occasions" that in this case "the central dispute has been how the collision occurred and whether the truck driver was negligent in causing it."

In its opposition to the ex parte application, Cemak conceded that Grant should be "de-designated" as an expert, as Cemak should have foreseen that it would need expert testimony on "the standard of care for a trucking company and its drivers." However, Cemak contended that it could not have reasonably foreseen that it would need to designate an expert on accident reconstruction, as it was planning to rely solely on percipient witness testimony as to how the accident occurred.

The trial court granted Pulido's ex parte application, striking Cemak's supplemental expert designation.[2]

We apply an abuse of discretion standard of review when considering whether the trial court properly excluded Cemak's expert witness designation on the ground that

---

[2]     Cemak has not included a transcript of the hearing on the ex parte application as part of the appellate record. Pulido argues that we should decline to consider Cemak's challenge to the ruling striking the supplemental expert designation, as Cemak has not provided the reporter's transcript from the hearing. (See *Hotels Nevada v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348 (*Hotels Nevada*) [the appellant's failure to provide an adequate record on an issue requires that the issue be resolved against appellant].) We will exercise our discretion to consider the issue on the merits, as we are able to evaluate whether the trial court abused its discretion based on the briefing for the ex parte application and the trial court's minute order.

7

Cemak unreasonably failed to comply with the expert exchange requirements. (*Boston v. Penny Lane Centers, Inc.* (2009) 170 Cal.App.4th 936, 950; *Stanchfield v. Hamer Toyota, Inc.* (1995) 37 Cal.App.4th 1495, 1504.)

As we have explained, Cemak conceded in the trial court that the supplemental designation of Grant as an expert witness on trucking safety should be stricken. Thus, any error by the trial court in striking the designation of Grant was invited error and not cognizable on appeal. (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212 ["[W]hen a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error."].) The only issue properly before us on appeal, therefore, is whether the trial court abused its discretion in striking the supplemental designation of Varat as an accident reconstruction expert.

The trial court is required by statute to grant a motion to preclude an expert witness from testifying, upon motion from the opposing party, if the designating party has "unreasonably failed" to list a witness as an expert in an initial exchange. (Code Civ. Proc., § 2034.300.) As the court explained in *Fairfax v. Lords* (2006) 138 Cal.App.4th 1019, 1025-1026 (*Fairfax*), when a party reasonably foresees that an expert witness will be designated by the opposing party on a central issue in the case, that party may not simply wait to receive the opposing party's expert witness designation and then file a supplemental designation identifying its own expert witness on that issue. Specifically, in *Fairfax*, during an initial expert exchange in a medical malpractice case, the defendant designated an expert witness "to address the only real disputed issue in this case—i.e., whether [the defendant's] treatment of [the plaintiff] complied with the standard of care."

8

(*Id*. at p. 1027.)  The defendant did not designate an expert witness on the standard of care during the initial exchange, and instead waited to identify an expert witness on that issue in a supplemental designation.  (*Id*. at p. 1022.)  *Fairfax* concluded that, under the circumstances, the trial court erred in denying the plaintiff's motion to strike the defendant's supplemental expert designation.  Because the standard of care was the central issue in the case, the plaintiff "had every reason to anticipate such a designation" and thus "had a corresponding obligation to designate whatever expert he expected to have testify on the issue *at the same time.*"  (*Id*. at p. 1027.)  As *Fairfax* summarized the applicable legal principle:  the Code of Civil Procedure requires "a 'simultaneous' exchange of information, in which each side must either identify any expert witnesses it expects to call at trial, or state that it does not intend to rely upon expert testimony.  When it comes to issues that both sides anticipate will be disputed at trial, a party cannot merely 'reserve its right' to designate experts in the initial exchange, wait to see what experts are designated by the opposition, and then name its experts only as purported 'rebuttal' witnesses."  (*Fairfax*, at p. 1021.)

This case falls squarely within the situation described in *Fairfax*.  As the parties agree, the main disputed issue to be resolved at trial was how the accident occurred.  Did Black's truck move onto the shoulder and strike Pulido, or did Pulido step onto the highway into the path of the truck?  Moreover, as established by the uncontradicted declaration filed by counsel for Pulido, Cemak was told *prior* to the initial expert exchange that Pulido had retained an accident reconstruction expert.  Thus, as in *Fairfax*, the trial court had ample reason to conclude that this was "not a situation in which

9

[Cemak] was somehow surprised by the content of [Pulido's] expert designation." (*Fairfax*, *supra*, 138 Cal.App.4th at p. 1027.) The trial court accordingly did not abuse its discretion in concluding that Cemak's supplemental expert designation of Varat should be stricken on the ground that Cemak unreasonably failed to identify Varat in its *initial* expert designation.

Cemak contends that this case is controlled by *Barboni v. Tuomi* (2012) 210 Cal.App.4th 340 (*Barboni*), rather than *Fairfax*. We disagree. In *Barboni*, neither side served expert witness designations by the agreed-upon date. (*Id*. at p. 343.) The defendant sought leave to serve a late expert witness designation, explaining that counsel had missed the original deadline because the date had been inadvertently miscalendared. (*Ibid*.) The trial court credited the explanation and gave the defendant leave to serve the late expert designation. (*Ibid*.) The appellate court concluded that the trial court had not abused its discretion in granting leave to serve a late expert designation. (*Id*. at p. 353.) As *Barboni* explained, it was not in a position to second guess the trial court's decision to credit counsel's explanation for missing the deadline, and more importantly, "while the exchange was not simultaneous, it was also not crafted by one party to put the other at a disadvantage in designating experts last." (*Ibid*.)

This case is nothing like *Barboni*. Here, unlike the plaintiff in *Barboni*, Pulido followed the rules for simultaneous exchange of expert information by timely serving an initial expert designation listing numerous experts, but Cemak waited to until after seeing Pulido's designation to identify its own experts on the same issues, putting Pulido at a disadvantage. Further, unlike in *Barboni*, where the court accepted counsel's explanation

10

that he miscalendared the date, the trial court here was well within its discretion to conclude that Cemak's failure to initially designate an accident reconstruction expert was not a mistake, but rather a tactical ploy. Thus, the relevant case here is *Fairfax*, not *Barboni*.

Moreover, even had Cemak been able to establish that the trial court abused its discretion in striking the designation of Varat as an expert in accident reconstruction, Cemak did not establish that any error was prejudicial. As provided in Code of Civil Procedure section 475, "[n]o judgment . . . shall be reversed . . . by reason of any error . . . unless it shall appear from the record that such error . . .was prejudicial" and that "a different result would have been probable if such error . . . had not occurred or existed." " 'Prejudice from error is never presumed but must be affirmatively demonstrated by the appellant.' " (*Hernandez v. County of Los Angeles* (2014) 226 Cal.App.4th 1599, 1616.) In this context, "[t]o establish prejudice, an appellant must show a reasonable probability exists that, in the absence of the error, he or she would have obtained a more favorable result." (*People ex rel. City of Santa Monica v. Gabriel* (2010) 186 Cal.App.4th 882, 887.)

Here, the record contains no offer of proof as to (1) what the substance of Varat's expert opinion would have been had he been permitted to testify at trial as an expert on accident reconstruction, and (2) whether he would have reached an opinion any different from Pulido's expert regarding how the accident occurred. Therefore, we are unable to conclude that a reasonable probability exists that the jury would have reached a result

11

more favorable to Cemak had Varat's expert testimony on accident reconstruction been introduced at trial.

B.    *The Trial Court Did Not Abuse Its Discretion in Admitting Roughan's Testimony on Future Economic Damages*

Cemak's next contention is that the trial court erred in admitting certain portions of the testimony of Roughan, the registered nurse who testified as to the costs that Pulido was expected to incur in the future as part of her ongoing medical treatment. "A trial court's determination that expert testimony is admissible is reviewed for an abuse of discretion." (*Summers v. A. L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1168.)

Roughan's testimony described a long list of specific items for which Pulido was expected to incur future expenses related to medical care, set forth in Exhibit 18A, which was referred to at trial. At the present economic value, the total cost of Pulido's expected future medical costs as described by Roughan was $787,565.[3] Cemak challenges Roughan's testimony as to only three items: (1) the long-term cost of the prescription drug Cymbalta, used to treat pain; (2) the long-term cost of a physiatrist, or pain management specialist;[4] and (3) the cost of setting up a special needs trust to manage and

---

[3]    This amount contained $716 in contingent expenses related to one of the surgical procedures.

[4]    According to Roughan, physiatry is a specialty involving physical medicine and rehabilitation, but not including surgery.

12

preserve the monetary funds required for Pulido's future medical care, including the legal services associated with the trust.[5]

As an initial matter, we note that Cemak made no objection at trial to Roughan's testimony about the costs associated with the special needs trust. A party may not seek reversal on appeal based on the erroneous admission of evidence unless it made a specific objection to the evidence in the trial court. (Evid. Code, § 353.) Accordingly, we conclude that Cemak has not preserved its appellate challenge to the admission of the evidence concerning the costs associated with the special needs trust, and we do not consider it further.

As to Roughan's testimony about Pulido's future need for Cymbalta and physiatry/pain management care, Cemak's objection at trial was that because Roughan is a registered nurse, not a doctor, she was not qualified to testify to Pulido's expected costs for Cymbalta medication and physiatry/pain management care, and thus there was no foundation for the admission of the evidence on those subjects. Further, Cemak argued that as to those two items, there was no testimony at trial from any other qualified

---

[5]     As the economist Hunt testified, at present value the expected cost of the Cymbalta is $117,090, the expected cost of the physiatry or pain management care is $5,881, and the cost of special needs trust is $87,502. Cemak contends that Hunt's testimony on those issues compounded the purported error in allowing Roughan to testify about them. To the extent Cemak is making a separate argument that portions of Hunt's testimony should have been excluded, we reject the argument for two reasons. First, Cemak made no objection at trial to the admission of Hunt's testimony on the issues she now focuses on in her appeal, and she accordingly may not raise a challenge to the admission of that evidence on appeal. (Evid. Code, § 353.) Second, the premise for Cemak's challenge to Hunt's testimony fails, because, as we will explain, Cemak has not established any error in admitting Roughan's testimony.

13

witness, such as Dr. Gold (the orthopedic surgeon) or Dr. Applebaum (the plastic surgeon), establishing that Pulido would require Cymbalta or physiatry/pain management care. Cemak pointed out that Roughan testified that she consulted with Dr. Lawrence S. Miller — who examined Pulido — about Pulido's need for physiatry/pain management care and the prescription of Cymbalta, but Dr. Miller did not testify at trial.

The trial court overruled both objections. As to Roughan's testimony about Pulido's expected future expenses for Cymbalta, the trial court concluded that a sufficient foundation existed based on Dr. Gold's testimony and Roughan's own testimony about her reliance, as a long-term treatment planner, on her consultations with Pulido's doctors. As to the physiatry/pain management care, the trial court ruled that Dr. Gold's testimony about Pulido's ongoing pain and nerve damage supplied a sufficient foundation for Roughan's testimony about Pulido incurring future costs for physiatry/pain management.

"It is the long-standing rule in California that experts may rely upon and testify to the sources on which they base their opinions (Evid. Code, §§ 801, 802), including hearsay of a type reasonably relied upon by professionals in the field." (*People v. Cooper* (2007) 148 Cal.App.4th 731, 746.) As provided in Evidence Code section 801, subdivision (b), an expert is authorized to render an opinion "[b]ased on matter . . . perceived by or personally known to the witness or made known to [the witness] at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which [the expert] testimony relates . . . ." Specifically, one medical expert may rely on the opinion of another medical expert. (*People v. Catlin* (2001) 26 Cal.4th 81, 137 (*Catlin*).)

14

Roughan testified that she is a registered nurse with a specialty in developing long-term treatment plans for patients, and that in doing so she regularly consults with the patient's physicians regarding the particular medical care that is anticipated for the patient. Based on this testimony, the trial court reasonably could determine that Roughan was a qualified expert in the field of long-term treatment planning,[6] and that the information given to Roughan by a patient's doctors is the type of information that Roughan reasonably could rely upon in forming a long-term treatment plan even though she is not a doctor.

Here, Roughan specifically testified that she consulted with Drs. Miller, Gold and Applebaum in developing the long-term treatment plan for Pulido. As to the need for the Cymbalta and the physiatry/pain management care, Roughan explained that she specifically consulted with Drs. Gold and Miller about the need to prescribe Cymbalta to Pulido to manage her ongoing pain,[7] and that she consulted with Dr. Miller, who is a

---

6     "[T]he trial court has broad discretion to determine whether a witness is competent and qualified as an expert; and its determination will not be disturbed on appeal unless ' "a manifest abuse of discretion" ' is shown." (*Mora v. Big Lots Stores, Inc.* (2011) 194 Cal.App.4th 496, 513; see also Evid. Code, § 720, subd. (a) ["A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates."].) Cemak has not questioned Roughan's qualifications to testify as an expert in the field of long-term treatment planning, and the trial court was within its discretion to conclude, based on Roughan's description of her background, that Roughan was qualified to testify to her opinions in that area of expertise.

7     Roughan specifically testified at trial that Dr. Gold prescribed Cymbalta to Pulido for pain. In its appellate brief, Cemak contends that Dr. Gold testified that he had *not* prescribed Cymbalta. In support of that statement, Cemak provides a citation to the

15

physiatrist, about the long-term treatment plan. Further, all three doctors reviewed a draft of the long-term treatment plan and approved it, including the medication. As additional foundation for Pulido's need for ongoing pain management care, Dr. Gold testified that based on her injuries, Pulido would have ongoing pain for the rest of her life.

Based on this testimony, the trial court was well within its discretion to conclude that as an expert in preparing long-term treatment plans, Roughan had a sufficient foundation to opine that Pulido was expected to incur specific expenses in connection with the ongoing use of Cymbalta to manage pain and for ongoing physiatry/pain management care even though Roughan is not a doctor.

Cemak relies at length on *Mosesian v. Pennwalt Corp.* (1987) 191 Cal.App.3d 851, 860-861. However, *Mosesian* does not advance Cemak's argument. *Mosesian* does nothing more than set forth the well-established principle, discussed in numerous subsequent opinions, that "[e]xperts may rely upon hearsay in forming opinions[,]" but "[t]hey may not relate an out-of-court opinion by another expert as independent proof of fact." (*Ibid*.) Indeed, although "it generally is not appropriate for the testifying expert to recount the details of the other physician's report or expression of opinion," it is left to the " 'sound judgment' " of the trial court to decide how much of another expert's hearsay opinion a testifying expert may describe in setting forth the basis for her own opinion. (*Catlin*, *supra*, 26 Cal.4th at p. 137.) Here, the trial court reasonably concluded, within its sound judgment, that in testifying about the long-term treatment plan she prepared for

whole of Dr. Gold's testimony. We have reviewed that testimony and find no support in the record for Cemak's assertion.

16

Pulido, Roughan did not relate excessive details of the out-of-court statements of Pulido's treating doctors. Based on the testimony at trial, the trial court reasonably could conclude that Roughan explained only in a general manner that in formulating her expert opinion on specific cost items she relied on her consultations with Pulido's doctors and included that information in her final cost estimate for Pulido's long-term treatment.

In sum, we conclude that the trial court did not err in overruling Cemak's objections to Roughan's testimony.[8]

C. *Cemak Has Waived Its Challenge to the Denial of the New Trial Motion Based on Insufficiency of the Evidence and Excessive Damages Because It Has Not Provided an Adequate Appellate Record*

Next, we turn to Cemak's contention that the trial court erred in denying its motion for a new trial. Specifically, Cemak contends that the trial court erred in rejecting its contention that (1) the evidence was insufficient to support the damages award; and (2) the damages award was excessive. A ruling on a motion for a new trial is reviewed under an abuse of discretion standard. (*Santillan v. Roman Catholic Bishop of Fresno* (2012) 202 Cal.App.4th 708, 733.)

Before proceeding any further, we consider Pulido's contention that Cemak has waived its challenge to the trial court's ruling on the motion for a new trial because it did

---

8      Further, we note that Cemak has not even established that the jury awarded all of the cost of the Cymbalta and the physiatry/pain management care as part of its verdict on future noneconomic damages. The evidence at trial showed that the cost associated with the Cymbalta and the physiatry/pain management care was $122,971. The jury awarded only $665,565 in future economic damages, which was $122,000 less than the $787,565 that Roughan and Hunt testified to as the expected cost of Pulido's future medical care.

17

not meet its burden to provide an adequate appellate record. " 'It is the duty of an appellant to provide an adequate record to the court establishing error. Failure to provide an adequate record on an issue requires that the issue be resolved against appellant.' " (*Hotels Nevada*, *supra*, 203 Cal.App.4th at p. 348.) Here, Cemak has not provided an adequate record on the motion for a new trial. The only pleading that Cemak provided from the motion for a new trial is its own initial moving papers. Cemak did not include Pulido's opposition to the motion for a new trial in the appellant's appendix, and if Cemak filed any reply papers it did not include those either. Further, Cemak did not provide us with a reporter's transcript from the hearing on the new trial motion. Although the minute order from the hearing on the new trial motion is included in the appellant's appendix, the content of the minute order makes clear that the reporter's transcript from the hearing is essential to understanding the basis for the trial court's ruling.[9]

Because Cemak has failed to provide an adequate record for us to review the ruling on the motion for a new trial to determine whether the trial court abused its discretion, we conclude that Cemak has waived its appellate challenge to that ruling.[10]

---

[9] Among other things, the minute order states that during the hearing, in making its ruling, the trial court "lists ex[c]erpts of the record that show the testimony re: prescription for C[y]mbalta by Dr. Miller in the [Evidence Code section] 402 hearing and trial testimony by Dr. Gold that C[y]mbalta was prescribed."

[10] Moreover, were we to reach the merits of Cemak's challenge to the order denying the motion for a new trial, it is clear based on our earlier analysis that Cemak's argument lacks merit. As the centerpiece of its motion for a new trial, Cemak argued that the evidence was insufficient to support the jury's award of future economic damages to Pulido based on the same challenge to Roughan's testimony that we have already discussed and rejected above. Specifically, Cemak simply repeats its argument that

18

D.      *Because It Did Not Object During Trial, Cemak May Not Seek Reversal Based on Statements That Opposing Counsel Made During Closing Argument*

Cemak contends that the trial court erred by improperly allowing counsel for Pulido to make statements during closing argument that purportedly inflamed the jury.

In support of its argument, Cemak points to statements made during Pulido's initial closing argument and rebuttal. During Pulido's initial closing argument, counsel stated that, depending on how the verdict comes out, Cemak will either "pop the corks on the champagne, congratulate everybody and say 'We got away with it,' " or it will "sit back and say 'We got caught. We shouldn't be doing business this way.' " During Pulido's rebuttal argument, counsel stated that Cemak's attitude toward safety "puts all of us in the community at risk" and that the jury should act as "the conscience of the community." Cemak did not object to these statements at trial. However, it argues on appeal that the trial court should have "preclud[ed]" counsel for Pulido from making the statements because they were designed to improperly inflame the jury.[11]

---

Roughan's testimony on Pulido's future expenses for Cymbalta, physiatry/pain management care, and creating a special needs trust should have been excluded and argues that the testimony therefore does not support the verdict. For the reasons we have explained above, Cemak's challenge to foundation for Roughan's testimony is without merit.

[11]     Cemak also contends that counsel for Pulido made the statements in violation of a ruling on a motion for limine. Specifically, Cemak is referring to its motion in limine, which is not included in the appellate record, which we infer from discussion in the reporter's transcript sought a ruling preventing opposing counsel from violating the "golden rule," under which counsel may not invite the jury to put itself in the victim's position. (*People v. Vance* (2010) 188 Cal.App.4th 1182, 1188.) However, the trial court never ruled on the motion in limine, reserving its ruling until later.

Because Cemak did not object to the statements during closing argument, it has waived its ability to argue that the statement were improper. "Generally a claim of misconduct is entitled to no consideration on appeal unless the record shows a timely and proper objection and a request that the jury be admonished. . . . The purpose of the rule requiring the making of timely objections is remedial in nature, and seeks to give the court the opportunity to admonish the jury, instruct counsel and forestall the accumulation of prejudice by repeated improprieties, thus avoiding the necessity of a retrial. . . . In the absence of a timely objection the offended party is deemed to have waived the claim of error through his participation in the atmosphere which produced the claim of prejudice." (*Horn v. Atchison, T. & S.F. Ry. Co.* (1964) 61 Cal.2d 602, 610, citations omitted.) Asserting misconduct for the first time in the context of a new trial motion, as Cemak did here, does not preserve the issue for appeal. The objection and the request for a curative instruction must be made during trial. (*People v. Williams* (1997) 16 Cal.4th 153, 254-255.) Because Cemak did not object to counsel's comments during closing argument and did not request that the jury be admonished, it may not rely on the statements as a basis for seeking reversal of the judgment.

E.     *Pulido's Motion for Sanctions and Motion to Strike*

As a final matter, we consider two motions filed by Pulido in the appellate court: a motion for sanctions and a motion to strike, which we indicated by previous order that we would consider together with this appeal.

Pulido argues in her motion for sanctions that we should impose monetary sanctions on Cemak and its attorney. According to Pulido, sanctions are warranted

20

pursuant to Code of Civil Procedure section 907 and California Rules of Court, rule 8.276 because the appeal is frivolous and was filed solely for the purpose of delay, and because Cemak violated appellate court rules in drafting its brief.

We deny the motion. Based on our review of the record and the relevant legal authority, as discussed above, the appeal is not wholly frivolous, and we do not perceive that Cemak has been motivated by an effort to harass or delay. Further, Cemak's violation of appellate court rules consist mainly of failing to include record citations in its summary of the factual background, although record citations are present in the argument portion of its brief. Those violations are not so egregious that sanctions are warranted.

Pulido's motion to strike seeks an order striking portions of Cemak's opening brief. Specifically, Pulido requests that we strike (1) the opening brief's mention of Pulido's felony convictions and a probation violation, as only one felony conviction was entered into evidence at trial; and (2) the opening brief's statement of facts, as it contains no citations to the record.

In ruling on the motion, we decline to strike any portion of the opening brief. However, we will disregard any statements in Cemak's brief that are not supported by the facts in the record. (See *Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 268 [instead of striking a portion of a reply brief upon motion from opposing counsel, the court "g[a]ve effect to" the motion to strike by "disregarding" improperly raised items].)

### DISPOSITION

The judgment is affirmed. Pulido's motion for sanctions and motion to strike are denied. As the prevailing party, Pulido is to recover her costs on appeal. Pursuant to the

21

terms of the Court's June 15, 2015 order conditionally granting Cemak's request to vacate submission and hold a second oral argument, Pulido's recoverable costs on appeal shall include the attorney fees and expenses incurred by Pulido as a result of her counsel's appearance at the oral argument on August 11, 2015.

IRION, J.

WE CONCUR:

McINTYRE, Acting P. J.

O'ROURKE, J.