Filed 1/22/25  P. v. Smith CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DRESHAUN OSCAR SMITH,<br><br>    Defendant and Appellant. | B337530<br><br>(Los Angeles County<br> Super. Ct. No. BA461118) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Deborah S. Brazil, Judge.  Affirmed.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Lauren N. Guber, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant Dreshaun Oscar Smith (Smith) appeals his conviction for second-degree murder (Pen. Code, § 187, subd. (a)).[1] On appeal, Smith argues the trial court erred in permitting the prosecution to question him on the details of his prior convictions involving firearms. We affirm, as even if we were to assume the trial court erred, Smith has not established any prejudice flowing from the purported error.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 9, 2017, Smith shot and killed Jonette Robinson (Robinson) while she was sitting in her car with her boyfriend. The car was parked in front of Robinson's home and she was sitting in the driver's seat. Smith was across the street with friends. Smith became angry and threw a bottle at Robinson's car. Robinson opened her car door and asked Smith why he threw the bottle. In response, Smith walked toward the car, drew a firearm, and shot at Robinson, hitting her in the arm. Robinson's boyfriend reached across her body and tried to close the car door, but it would not close all the way. Smith then approached the car, opened Robinson's door, and fired a second shot, this time hitting Robinson's head. Smith then casually walked down the street away from the car. Robinson died shortly thereafter.

An amended information was filed charging Smith with murder (§ 187, subd. (a)) with a firearm (§ 12022.53, subds. (b)-(d)). The information also

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

2

alleged that Smith suffered a prior strike conviction (§§ 1170.12, 667, subd. (a)).[2]

I.    *Trial*

Smith and Robinson lived in separate houses located on the same property and had been part of the same friend group for several years.  At trial, Smith admitted to shooting Robinson but argued he acted in self-defense because he saw a gun in Robinson's hand.  No gun was found on Robinson or in her vehicle.  The shooting was captured by surveillance cameras in the area, and a video of the shooting was played for the jury.

Smith claimed he feared that other people in Robinson's car meant him harm because he had gotten into a fistfight with Robinson's brother, Cory,[3] the night before the shooting.  The altercation eventually led to Cory standing in front of Smith's house with a group of people (including Robinson) and firing a gun.

As Smith's only claim of error on appeal concerns a line of questioning during his cross-examination, we limit our discussion of the trial to the relevant portions of Smith's testimony.

---

[2]    The amended information also alleged three prior convictions under section 667.5 that were stricken before trial.

[3]    As Cory Robinson and Jonette Robinson share a last name, we refer to Cory by first name only for clarity.  No disrespect is intended.

A.   *Smith's Direct Examination*

Smith admitted he threw the bottle at Robinson's car, claiming he did so because Robinson insulted him and made him angry.[4]  After throwing the bottle he began walking toward his house.  While he was walking, he saw Robinson getting out of her car with a gun in her hand.  When he saw the gun in Robinson's hand, he fired two shots and walked away.  He did not know whether either of his shots hit Robinson.  He found out hours later that Robinson had died.

Smith also testified that he was not sure who else was in Robinson's car and that he was worried Cory might try to harm him again.  He believed Cory was threatening his life by firing a gun outside his house the previous day.  Smith had been shot at on four prior occasions.

B.   *Smith's Cross-Examination*

Before cross-examining Smith, the court held a sidebar with counsel.  At the sidebar, the prosecutor asked for permission to question Smith about his prior gun use.  The prosecutor indicated there was a report from one of Smith's prior felonies in which he robbed an eight-year-old child at gunpoint.  The prosecutor argued Smith "said he's been shot at four times. . . .  I think, because he's been saying he's been shot, I can ask, 'Have you used a gun before on someone else?'"  In response, Smith's counsel said "I would object and submit to the court" without identifying any specific grounds for the objection.  The court ruled the prior incident was relevant because Smith testified that "he was fearful because he'd been shot in the past."

---

[4]    There was conflicting evidence regarding Smith's motive for throwing the bottle.  According to Smith, he threw the bottle at Robinson's car because she called him "a police-ass nigger."  However, Robinson's boyfriend testified that Robinson did not say anything to Smith before Smith threw the bottle.

On cross-examination, Smith admitted he used guns on other people before the shooting with Robinson. When the prosecutor asked Smith if he used a gun to rob an eight-year-old child, Smith denied it. The prosecutor then asked if he was convicted of a robbery in 2001. Smith admitted he was. When asked if he used a gun during that robbery, Smith said one of the other people involved in the robbery had used a gun but he had not used one himself.

Smith also testified that he had been friends with Robinson for years, that she was kind to him and never said anything negative to him. He also admitted he never saw Robinson carry any weapons or attack a person before. He admitted he did not know why he thought Robinson was going to shoot him. He also admitted he had no reason to believe Robinson was carrying a gun at the time.

When he thought he saw a gun in Robinson's hand, he drew his gun and took two steps toward her car before firing the first shot. He fired because he was scared and thought someone was going to harm him. He said he feared for his life because he did not know who else was inside the car with Robinson and was still worried about the incident with Cory the night before. Even though he was afraid for his life, he continued walking toward the car, opened Robinson's door, and shot into the car again. He said he was still scared after the shooting, claiming he did not even realize he had fired shots. When asked why he casually walked away from Robinson's car after the shooting if he was still scared for his life, he said "At that point, I don't even know what was going on, in my head."

II.   *Verdict*

The jury convicted Smith of second-degree murder (§ 187, subd. (a)) and found true the allegation that he personally and intentionally used a firearm to commit the murder (§ 12022.53, subd. (d)).  The trial court struck Smith's prior strike conviction and sentenced him to 40 years to life in state prison.

Smith timely appealed.

## DISCUSSION

Smith alternatively claims the evidence of his prior robbery was inadmissible because it was irrelevant (Evid. Code, § 350), unduly prejudicial (Evid. Code, § 352), and improper character evidence (Evid. Code, § 1101). "We review a trial court's ruling on the admissibility of evidence for abuse of discretion.  [Citation.]" (*Nevarrez v. San Marino Skilled Nursing & Wellness Centre, LLC* (2013) 221 Cal.App.4th 102, 117; *People v. Kipp* (1998) 18 Cal.4th 349, 369.)  We do not disturb that ruling on appeal absent a showing that the court exercised its discretion in an "arbitrary, capricious, or patently absurd manner" that resulted in a "manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10.)  A judgment may be set aside for the erroneous admission of evidence only if the error complained of was prejudicial. (See Cal. Const., art. VI, § 13; Evid. Code, § 354.)  Appellants bear the burden on appeal to show a purported error was prejudicial.  (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069; *In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337.)  The parties agree that prejudice in this context is reviewed under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*).  Under *Watson*, reversal is only required if Smith establishes a reasonable probability that he would have obtained a more

favorable outcome at trial if the challenged evidence had not been admitted. (*Id*. at p. 836.)

Smith does not provide any analysis on the subject of prejudice. Instead, he sets forth general legal principles under the *Watson* standard and then states in a conclusory fashion that "Given the entire state of the evidentiary record, had the specifics of Smith's 2001 robbery conviction not been admitted there is a 'reasonable chance' that a different result would occurred [*sic*]; i.e., a conviction for voluntary manslaughter." This sentence is the entirety of Smith's argument on the point. Smith does not provide a summary of the evidence he relies on to establish prejudice, nor does he provide any citations to the record where this evidence is located. Smith also does not explain how the challenged evidence supposedly led the jury to convict him of second-degree murder rather than voluntary manslaughter.

In response, the Attorney General contends any error was harmless, arguing the evidence of Smith's guilt was overwhelming as the video footage shown to the jury showed Smith acting inconsistently with his claim of self-defense. We agree there was significant evidence contradicting Smith's version of events. Specifically, the video showed Smith walking to Robinson's car, opening her door, firing the fatal shot to Robinson's head, and then casually walking away. These actions contradicted Smith's testimony that he was afraid of Robinson, that he was worried others could be in the car who meant him harm, and that he did not know whether any of his gunshots had struck Robinson. Smith also admitted he had never known Robinson to carry a weapon and had no reason to believe she was carrying a firearm on the day of the shooting. In his reply, Smith offers no rebuttal to this argument and does not discuss the evidence cited by the Attorney General. Instead, he

simply states, "Appellant has addressed the subject of prejudice in his opening brief." We disagree.

Smith's conclusory reference to the "entire state of the evidentiary record" is insufficient to carry his burden to establish prejudice on appeal. (*People v. Cardenas* (1997) 53 Cal.App.4th 240, 248 ["broad and conclusory assertions of prejudice are not enough; appellant must develop an argument that specifically substantiates his claim"]; *People ex rel. City of Santa Monica v. Gabriel* (2010) 186 Cal.App.4th 882, 887 [merely "asserting in conclusory fashion that [appellant] was prejudiced" is insufficient]; *People v. Yuksel* (2012) 207 Cal.App.4th 850, 857 ["Appellant's discussion of harmless error principles is conclusory. He merely recites the federal and state tests for error and asserts they apply here. Appellant's conclusory discussion waives the point on appeal"].)

Our role is not to examine the entire evidentiary record to construct arguments for Smith. Rather, "our duty to examine the entire cause arises when and only when the appellant has fulfilled his duty to tender a proper prejudice argument." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.) Smith has not tendered any such argument on appeal, nor can he. Smith makes it clear that he is not challenging the introduction of evidence that he was previously convicted of a robbery, instead he only challenges the prosecution's reference to "the details of his prior robbery offense." Specifically, he objects to the reference that he robbed a child. But these details of his prior robbery conviction were never admitted into evidence. The prosecutor asked Smith if he had previously robbed an eight-year-old child by pointing a gun at him, and Smith denied it. The prosecutor then asked if he had previously been convicted of robbery and Smith admitted that he had. However, no one indicated the robbery conviction involved a child. Thus, the

8

only reference to a child victim came in the form of the prosecutor's question, which is not evidence. (*People v. Margarejo* (2008) 162 Cal.App.4th 102, 107 ["Counsel's questions themselves are not evidence"].)

As the Attorney General notes, the jury was specifically instructed that "[n]othing that the attorneys say is evidence. . . . Their questions are not evidence. Only the witnesses' answers are evidence. The attorneys' questions are significant only if they helped you to understand the witnesses' answers. Do not assume that something is true just because one of the attorneys asked a question that suggested it was true." "We presume the jurors understood and followed the instructions." (*People v. Johnson* (2015) 61 Cal.4th 734, 770 (*Johnson*).) Smith does not address this argument in his reply and has not put forth any evidence or argument suggesting the jury ignored this instruction from the trial court.

Smith's unsupported speculation that he might have been convicted of manslaughter but-for the prosecutor's question does not overcome the presumption that the jury followed the court's instructions. (*Johnson*, *supra*, 61 Cal.4th at p. 770; *People v. Williams* (2015) 61 Cal.4th 1244, 1279 [speculation alone is insufficient to overcome the presumption that the jury followed the court's instructions].) "[I]n light of the trial court's instruction that any statement made by an attorney in the course of the trial did not constitute evidence and 'may be considered only in so far as it supplies meaning to this witness's answer,' there is no danger" Smith was prejudiced by the prosecutor's question. (*People v. Samayoa* (1997) 15 Cal.4th 795, 844.)

As Smith has not carried his burden of establishing prejudice, we affirm his conviction. (See Cal. Const., art. VI, § 13; Evid. Code, § 354.) Therefore, we need not determine whether the trial court erred in allowing

9

the prosecution to question Smith about his prior conviction and gun use and decline to do so.[5]

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, J.

WE CONCUR:


CURREY, P. J.


COLLINS, J.

---

[5] It also appears that Smith may have forfeited any claim of error with respect to this line of questioning because he failed to articulate any specific grounds for his objection at trial.  (Evid. Code, § 353, subd. (a) [judgment cannot be reversed for evidentiary error unless "There appears of record an objection to . . . the evidence that was timely made and so stated as to make clear the specific ground of the objection"].)  At trial, Smith's counsel stated a general objection without identifying any specific ground or grounds the objection was based on.  This is generally insufficient to preserve the issue for appellate review.  (*People v. Marks* (2003) 31 Cal.4th 197, 228 ["A general objection to the admission or exclusion of evidence, or one based on a different ground from that advanced at trial, does not preserve the claim for appeal"].)  However, as we nonetheless affirm the judgment based on a lack of prejudice, we elect not to determine whether Smith separately forfeited his claim by failing to raise a proper objection at trial.